**In re Richard and Julie MOORE, Debtors.**

**NCNB NATIONAL BANK OF FLORIDA, Plaintiff,**

v.

**Richard and Julie MOORE, Defendants.**

**CARTERET SAVINGS & LOAN ASSOCIATION, Plaintiff,**

v.

**Richard and Julie MOORE, Defendants.**

**ITT COMMERCIAL FINANCE CORPORATION, Plaintiff,**

v.

**Richard and Julie MOORE, Defendants.**

**Bankruptcy No. 86–3180–8P7.**

**Adv. Nos. 86–513, 86–514 and 86–512.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

July 29, 1988.

Larry Foyle, Tampa, Fla., for plaintiff.

Shirley C. Arcuri, Tampa, Fla., for defendants.

**FINDINGS OF FACTS, CONCLUSIONS OF LAW AND MEMORANDUM OPINION**

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matters under consideration are three (3) adversary proceedings filed by Carteret Savings & Loan Association, NCNB National Bank of Florida, and ITT Commercial Finance Corporation against the Debtors, Richard and Julie Moore. NCNB's complaint sounds in six counts. In Counts I and II NCNB seeks to except its debt from discharge based on the allegation that the Debtors obtained a line of credit from NCNB by use of a false financial statement or in the alternative by false representation. (11 U.S.C. § 523(a)(2)(B) and (2)(A)) The claims in Count III and IV request a denial of the Debtors' discharge for their failure to satisfactorily explain the loss of their assets, or in the alternative, for making a false oath in connection with their Schedules and Statements of Affairs. (11 U.S.C. § 727(a)(4) and (a)(5)). The claim in Count V has been withdrawn. In Count

VI, NCNB alleges that the Debtors, with the intent to hinder, delay or defraud creditors, transferred or removed or concealed property of the estate within one year before the date of filing of the Petition (11 U.S.C. § 727(a)(2)).

Counts I through VI of Carteret's complaint are based upon the same provisions of the Bankruptcy Code as set forth in NCNB's complaint. ITT has filed a four-count complaint which in addition to relying on the same provisions of the Code as NCNB and Carteret, also seeks to except its debt from discharge based on the allegation that the Debtors converted property belonging to ITT. (11 U.S.C. § 523(a)(6))

After the pre-trial conference in this matter, this Court entered its Order consolidating these adversary proceedings for purposes of discovery and trial.

The facts relevant to a resolution of this controversy as established at the final evidentiary hearing are as follows:

At the time relevant to the matters under consideration, the Debtor Richard Moore applied for and obtained a "Line One" credit line from NCNB. In connection with this transaction, the Debtor Richard Moore signed a loan application which was submitted to NCNB together with a financial statement dated February 1, 1985 (Plaintiff's Exhibit # 13), prepared and signed by both Richard and Julie Moore, showing the value of the Debtors' assets to be approximately $1.2 million. The financial statement contained the following assets with the following values allocated to each:

| | | |
|---|---|---|
| A. | Residence | $550,000.00 |
| B. | Land on North Nebraska | $127,000.00 |
| C. | Stock in Mobile Home Resale Corporation | $ 90,000.00 |
| D. | Stock in Financial Investment Corp. | $ 90,000.00 |
| E. | Home Furnishings | $ 42,000.00 |
| F. | Mortgage Receivable | $ 59,000.00 |
| G. | Jewelry | $ 69,100.00 |
| H. | 1980 Mercedes 450–SEL ) 1982 Mercedes 240–D )— 1984 BMW ) | $ 65,000.00 |
| I. | Ellis Fund | $ 26,415.00 |

It appears that NCNB extended two loans to the Debtors, one being a $50,000.00 unsecured line of credit, and the other a single payment note of $22,083.15.

On July 24, 1986, the Debtors filed their Voluntary Petition under Chapter 7. Their schedule of assets filed in connection with their petition for relief did not include certain items that had been previously scheduled on their financial statement as part of their assets submitted to NCNB. Moreover, the values of these items were significantly less than those stated by the Debtors for the same items on their financial statement to NCNB. For instance, the financial statement submitted to NCNB lists $69,100.00 as the value of jewelry, while the Debtors' schedules indicate only a $2,000.00 value for jewelry.

While the Debtors admit that they owned substantial assets within eighteen months of filing their petition for relief, it is their contention that many of these assets were sold or liquidated, and the proceeds were used to pay for their living expenses as Mr. Moore became substantially unemployed in the fall of 1985. At the trial, the Debtors testified that their major asset, their residence, was sold in October 1985 for $518,000.00, which after paying off the first mortgage balance of $152,000.00 resulted in cash to the Debtors of $342,827.48. The Debtors testified that these funds were reinvested in a replacement residence costing $342,230.26. The Debtors further testified that in connection with the sale of their home, they sold their home furnishings which they had previously valued at $42,000.00 for $10,000.00. As for the disposition of the jewelry, whose value was based on a previous appraisal and estimation of $69,100.00, Mrs. Moore testified that the appraisal included items belonging to their daughter, that those items of jewelry had always belonged to her daughter and that she included it on their financial statement as long as their daughter was of minority age and that at the time they filed their schedules in connection with their Petition, their daughter reached majority age and they no longer included her jewelry in

their assets. The Debtors also testified that the three automobiles listed on their financial statement were ultimately sold and they received only $2,000.00 in net proceeds from these sales. In all, the record reveals that the total amount of cash assets available to the Debtors within one year of the date of the filing of their petition was approximately $114,000.00.

Based on the foregoing factual setting, it is the contention of NCNB that the Debtors have not satisfactorily explained the loss of approximately $1,000,000.00 of net worth and, therefore, the Debtors are not entitled to a discharge pursuant to § 727(a)(5) of the Bankruptcy Code. It is also the contention of NCNB that the Debtors either transferred property within one year of the filing of their petition for relief with the intent to hinder or delay creditors or, in the alternative, did not transfer the assets and are concealing the same, and, therefore, their discharge should be denied pursuant to § 727(a)(2)(B).

Considering first NCNB's contention that the Debtors' discharge should be denied based on § 727(a)(5) of the Bankruptcy Code, this Court points out that the burden of proof rests with the Debtors who must explain to the satisfaction of this Court the loss of their assets. *See, e.g., In re Chalik*, 700 F.2d 986 (5th Cir.1983), ed. 748 F.2d 616, 619 (11th Cir.1984) (Vague and indefinite explanations of losses that are based upon estimates that are uncorroborated by documentation are unsatisfactory.) Considering the evidence in light of these legal principles, this Court is satisfied that the Debtors have failed to satisfactorily explain the loss of their assets. Even accepting the Debtors' accounting of $85,864.22, which is supported by scant documentation, the Debtors have failed to satisfactorily explain the loss of the balance of $28,135.78 during the ten-month period prior to their filing of the Chapter 7 Petition. This amount of cash, which the Debtors claim they used for living expenses, but which is totally undocumented is not insignificant in the total scheme of events, in light of the fact that the Debtors also failed to furnish any proof that the $69,-100.00 worth of jewelry was in fact given to or belonged to their daughter.

Even accepting Mrs. Moore's explanation that the jewelry belonged to her daughter, this only proves that their financial statement submitted to the various financial institutions was false because the Moores had no business scheduling jewelry on their financial statement if, in fact, it was owned by their daughter. In addition, if the jewelry was in fact transferred to the daughter, this alleged transfer was not disclosed on the Debtors' Statement of Financial Affairs. Thus, this alleged transfer which was not supported by any evidence in spite of the fact that the Debtors' daughter was available to testify, completely refutes the claim of Mrs. Moore that the explanation she furnished concerning the jewelry was satisfactory and acceptable.

As to the disposition of the cash, while the Debtors did have some cancelled checks, the total of the same did not even approach the total of the sums available to the Debtors one year prior to the commencement of their case. The explanation that they were spent on ordinary living expenses is not substantiated by any documentation and as mentioned earlier, the burden of proof rested clearly on the Debtors. Therefore, this Court concludes as a matter of law, the Debtors did not satisfactorily explain the loss of their assets and, therefore, pursuant to 11 U.S.C. § 727(a)(5), the Debtors' discharge shall be denied.

In light of the foregoing, it is unnecessary to rule on the other claims set forth in NCNB's complaint as well as the complaints brought by ITT and Carteret.

A separate final judgment will be entered in accordance with the foregoing.