Nasser Ali FAROUKI, Plaintiff–
Appellant,

v.

**EMIRATES BANK INTERNATIONAL,
LIMITED, Defendant–Appellee,**

and

**Ron Cerino; Enterprise Management,
Incorporated, Defendants.**

No. 92–2339.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 25, 1993.

Decided Jan. 14, 1994.

C. Lamar Garren, Piper & Marbury, Baltimore, MD, argued (David N. Braus, David N. Braus, Chartered, Great Falls, VA, on brief), for plaintiff-appellant.

Jeffrey Howard Dygert, Ross, Dixon & Masback, Washington, DC, argued (James E. Grossberg, on brief), for defendant-appellee.

Before MURNAGHAN and HAMILTON, Circuit Judges, and YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.

## OPINION

MURNAGHAN, Circuit Judge:

The debtor in bankruptcy proceedings, Nasser Farouki, personally guaranteed a five million dollar loan made by Dubai Bank International Limited ("the Bank") to Dina Associated, S.A. ("Dina"). After Dina defaulted, the Bank pursued Farouki for payment based upon his personal guarantee. Farouki filed a petition in bankruptcy and sought a

general discharge of his debts under Chapter 7 of the U.S. Bankruptcy Code. The Bank opposed the discharge. The bankruptcy court denied the discharge on six independent grounds, and the District Court for the Eastern District of Virginia affirmed.

From 1981 through 1986, Farouki served as the Director of Dina, an international trading and marketing firm primarily involved in the construction industry in the Middle East. He was an officer of Dina from 1985 to 1986. Dina was an affiliated entity of Dynasystems Corporation organized under the laws of Liberia and headquartered in Monaco. Nasser Farouki's brothers, Fawaz and Bassim, operated and managed Dynasystems.[1]

In March 1984, Nasser Farouki and his brothers obtained from the Bank a five million dollar loan for Dina.[2] At that time, during a preliminary meeting with representatives of the Bank, Fawaz and Bassim represented that they and their brother, Nasser, owned all of the stock in Dina. Fawaz and Bassim Farouki signed a Guaranty Agreement personally guaranteeing the loan and representing that each was a principal shareholder of the capital stock in Dina.[3] Nasser Farouki executed a broad power of attorney allowing his brother, Bassim, to sign documents on his behalf in connection with the Dina loan. Bassim executed all of the initial loan agreements, including the Guaranty Agreement, on behalf of his brother.

Within months, Dina defaulted on the loan. The Bank asked Nasser Farouki to send it Dina's financial statements. The Bank received a letter from Bassim Farouki including Dina's financial statements as well as a financial statement dated September 30, 1984 purporting to be that of the principals of Dina, labeled, "Combined Personal Financial Statement—Fawaz, Bassim and Nasser Farouki." The statement represented the net worth of the brothers as $36,268,228. It

1. Nasser Farouki was the only officer and director of Dina who was a resident of the United States.

2. The Bank later assigned its rights in the loan to Union Bank of the Middle East ("Union"), the party in the instant case. The appellee has noted

that Union has since assigned its rights to Emirates Bank of the Middle East, Ltd.

3. The Guaranty Agreement stated that each of the guarantors, including Nasser Farouki, "is a principal shareholder of the capital stock of Dina."

stated that the three brothers owned 100% of Dina and of Dynasystems Corporation and possessed a controlling or substantial interest in seven other companies. The Schedule detailing their business investments indicated that the book value (substantially lower than the aggregate market value) of Dina in September of 1984 was $10,473,243.

In May 1985, the brothers restructured the loan by way of a "First Amendment" that modified the initial loan agreement. They also signed an affidavit of judgment by confession. A copy of the Guaranty Agreement executed by the brothers was attached to the affidavit of judgment by confession. Nasser Farouki personally reviewed and signed those documents.[4]

Dina fell into default a second time, and, in June 1985, the Bank obtained a confessed judgment against Nasser Farouki, his brothers, and Dina in a New York State court in the amount of $3,900,517.70. Before the Bank could satisfy its judgment, Nasser Farouki filed a petition for bankruptcy on February 5, 1987. The Bank attempted to block discharge of Nasser Farouki's debts. On May 11, 1987, the deadline for filing complaints objecting to the discharge of Nasser Farouki's obligations, the Bank filed a motion for enlargement of time in which to file its complaint. The bankruptcy court agreed to hear argument on the enlargement motion on July 10, 1987 at 10 a.m. On July 10, however, counsel for the Bank did not arrive at the courthouse until 10:25 due to car trouble. By the time the lawyer arrived, the court had already denied the motion. Later that same day, one of the creditors, Ronald J. Cerino, filed a motion for reconsideration of the denial on behalf of all of the creditors.[5] The hearing on that motion was held on September 1, 1987. The bankruptcy court granted the motion for reconsideration allowing the Bank thirty days from that date to file a complaint objecting to Nasser Farouki's dis-

charge. The Bank within 30 days filed such a complaint, and the bankruptcy court held a trial on the creditors' motion objecting to the debtor's discharge beginning on July 29, 1988.

In December 1991, the Bankruptcy Court for the Eastern District of Virginia denied Nasser Farouki's request for discharge of his debts. 133 B.R. 769. The District Court for the Eastern District of Virginia affirmed in September 1992, and Nasser Farouki has appealed the district court's decision.

The main issues in the proceeding on the Bank's objection to discharge centered around Nasser Farouki's failure to provide accurate information regarding the following: the Dina stock he represented himself as owning when the brothers obtained the loan; a $1350 loan or advance from his sister; a $73,000 transfer into and out of his account for his father; and his alleged undervaluation of his personal property. He also has argued for the first time on appeal that the Bank failed to file its objection to his discharge in a timely manner, thereby precluding the Bankruptcy Court's jurisdiction over that objection.

## I. *The Timeliness of the Bank's Objection to Nasser Farouki's Discharge*

■ The Bank timely filed a motion for enlargement of time in which to file a complaint objecting to the debtor's discharge pursuant to Bankruptcy Rules 4004(a) and (b) and 9006(b)(3). Rule 4004(a) provides:

In a chapter 7 liquidation case a complaint objecting to the debtor's discharge under § 727(a) of the Code shall be filed not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a).

Rule 9006(b)(3) provides in pertinent part:

The court may enlarge the time for taking action under Rules ... 4004(a) ... only to

---

4. Nasser Farouki has denied having anything to do with the loan negotiations and has claimed he never saw the Guaranty Agreement until the date he was served with the complaint. The Bank has asserted that Nasser Farouki attended the meeting to restructure the loan and reviewed the documents which explicitly affirmed the Guaranty. Nasser Farouki has admitted that, in connection with the restructuring of the loan, he signed

various documents that ratified the previous Guaranty Agreement.

5. The creditors initially involved in the action were Ronald J. Cerino, former counsel for Dina and the Farouki brothers; Dubai International Bank; and Sovran Bank.

the extent and under the conditions stated in those rules.

Rule 4004(b) allows the bankruptcy court, on the motion of any party in interest, to extend the time for filing a complaint objecting to discharge for cause. Such a motion "shall be made before such time [60 days] has expired." · The Bank filed its motion for enlargement on May 11, 1987, the last day of the applicable 60 day time period.

Nasser Farouki has argued that, under Rule 4004, the Bank's complaint objecting to his discharge was not timely filed. When counsel for the Bank failed to appear at 10:00 a.m., the time fixed for the hearing on the Bank's motion for enlargement of time, the judge denied that motion. The creditors filed a motion for reconsideration that same day. The court, finding the 25 minute delay excusable due to transportation difficulties, granted the motion for reconsideration on September 1, 1987. Nasser Farouki has argued that the judge's initial denial of the Bank's motion for enlargement closed the applicable time period and that any subsequent action by the Bank regarding the discharge was precluded by that closure and hence of no effect.

Farouki's argument has both a procedural and a substantive aspect. Putting the merits of his claim aside for the moment, it may well be that Farouki waived his claim asserting the untimeliness of the Bank's complaint because he made that claim for the first time ·on appeal. Under the rule established in *In re Santos*, 112 B.R. 1001, 1008 (Bankr. 9th Cir. 1990), "the timeliness of a dischargeability complaint presents an affirmative defense that must be raised in an answer or responsive pleading.... If the defense is not raised in the answer or responsive pleading, it is generally waived."[6] Farouki did not raise the defense of untimeliness until he appealed to this court. Therefore, the trial court did not have the opportunity to consider the merits of such a defense. Because we find Farouki's argument unpersuasive on substantive grounds, however, we need not rule on the procedural aspect of his claim.

As to the merits of his argument, Farouki has suggested that the bankruptcy court did not have jurisdiction to grant the motion for reconsideration because such a ruling violated the strict time limitations imposed by Rule 4004(b).[7] Farouki has asserted that all courts, other than the Ninth Circuit, consider the time period of Rule 4004 to be a jurisdictional requirement.[8] Discussing *Santos, supra*, an opinion rejecting the jurisdictional argument, Farouki has asserted that the Ninth Circuit's decision represents a minority position supporting the conclusion that the time periods delineated in Rule 4004 are non-jurisdictional. Farouki has provided no basis for such an assertion. *Santos* was decided by the United States Bankruptcy Appellate Panel of the Ninth Circuit. The case analogizes Rules 4004(a) and 4007(c), holding that "the deadlines for filing dischargeability complaints and objections to discharge set forth in Rules 4007(c) and 4004(a) are not jurisdictional time limits." 112 B.R. at 1006.[9] In support of its holding, the court refers to the structure and policy of 4007(c), the relevant statutory scheme, and the purposes and poli-

6. In *In re Santos*, the bankruptcy court had determined that waiver could not apply as a matter of law. The Bankruptcy Appellate Panel remanded the case to be determined in a manner consistent with the opinion's holding that, in the context of Rules 4007(c) and 4004(a), waiver may be asserted to preclude reliance on the bar date. Ultimately, the determination rests in the discretion of the court. *Id.*

7. If, in fact, the court did not have jurisdiction, the fact that Farouki raised the lack of timeliness issue for the first time on appeal would be irrelevant. Parties may not waive a court's lack of jurisdiction.

8. *Appleton Electric Company v. Graves Truck Line, Inc.*, 635 F.2d 603 (7th Cir.1980), *cert.*

denied, 451 U.S. 976, 101 S.Ct. 2058, 68 L.Ed.2d 357 (1981) is the only circuit court case cited in support of the appellant's proposition. *Appleton* is not, in fact, a bankruptcy case and does not mention Rule 4004. *Appleton,* involving a refund order issued by the Interstate Commerce Commission against a class of motor common carriers, stands for the propositions that the federal courts are courts of limited jurisdiction and that a lack of jurisdiction cannot be waived by the parties.

9. The *Santos* court also noted that many courts have found the deadlines in the rules to be subject to equitable tolling or waiver, thereby implying that the rules are not jurisdictional. *Id.* at 1005.

cies underlying the bar date. The *Santos* court concludes that "the total preclusion of equitable relief would be inconsistent with those Panel cases which recognize, in *dicta*, that relief from the bar date should be allowed in extraordinary cases." *Id.* at 1006.

In opposition, Farouki has offered *In re Barley*, 130 B.R. 66, 68 (Bankr.N.D.Ind. 1991), which held that the time limits governing filings under Rule 4007(c) and § 9006(b)(3) are jurisdictional, but, again, did not mention Rule 4004.[10] *Barley* does, however, reject the holding in *Santos*, concluding that "the timeliness of a dischargeability complaint is part and parcel of the creditor's cause of action and not merely a procedural bar that can be waived if not pled. A timely complaint is a jurisdictional prerequisite to a creditor's right to relief." *Id.* at 69.

■ No Fourth Circuit cases have ruled on the jurisdictional issue. As between *Santos* and *Barley*, the former appears to be the more well-reasoned case on the issue, and we believe it should be followed. Under *Santos*, then, Rule 4004(a) does not preclude the bankruptcy court from exercising its equitable powers in extraordinary cases. The denial of discharge in the instant case was not improper on jurisdictional grounds. It should be made clear, moreover, that we find the bankruptcy and district courts had jurisdiction because the Bank timely filed a motion for enlargement of time to file an objection to discharge.[11]

Although the Bankruptcy Rules and the case law indicate that courts may not use their discretion to enlarge the time periods at issue in 4004(a) on the basis of excusable neglect, there is no case law regarding the validity of such discretion as applied to motions for reconsideration. The Bank did timely file its motion for enlargement. The issue before the court concerned the judge's discretion to grant a timely motion for reconsideration, not to grant an untimely motion for enlargement, on the basis of excusable neglect.

There is no authority specifically governing motions for reconsideration of a denial of a motion for enlargement. Farouki has failed to present a single case holding that a court may not reconsider and ultimately grant a timely filed motion for enlargement based on its own discretion or equitable powers.[12]

In *In re Riso*, 57 B.R. 789 (D.N.H.1986), a creditor timely filed a motion to extend the time for filing an objection to discharge from September 7, 1984 to October 27, 1984. The court granted the extension, and the clerk proceeded to mail out a routine order to all the parties erroneously setting a new deadline for filing objections to discharge as December 3, 1984. The creditor relied on the date in the order, filing his objection at the end of November, that is, one month after the court ordered, extended deadline of October 27. In *Riso*, the district court addressed the issue of whether the bankruptcy court had the equitable power to extend the deadline for filing objections to dischargeability. The court concluded that a "bankruptcy court has the inherent equitable power to correct its own mistake to pre[v]ent an injustice." *Id.* at 793.[13]

---

10. Rules 4004 and 4007 are similar—4007 governs cases under § 523(a) while 4004 governs cases under § 727, but Nasser Farouki has not made an argument analogizing the two.

11. The holding in the instant case is not, therefore, inconsistent with *Barley*. The courts in the instant case did not exercise their equitable powers to permit the late filing of an objection to discharge. Rather, the courts exercised their equitable powers to grant a motion for reconsideration of the denial of a timely filed motion for enlargement of time to file an objection to discharge.

12. The bankruptcy court's equitable powers are derived from 11 U.S.C. § 105(a), which provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent abuse of process."

13. In *In re Anwiler*, 958 F.2d 925 (9th Cir.), *cert. denied*, ── U.S. ──, 113 S.Ct. 236, 121 L.Ed.2d 171 (1992), the Ninth Circuit agreed with the Bankruptcy Appellate Panel that the bankruptcy court has the equitable power to correct its own mistakes, even if that means allowing an untimely filing to proceed. "Allowing a court to correct its mistakes is not inconsistent with the purpose of Bankruptcy Rules 4004 and 4007." *Id.* at

The lawyer for the Bank experienced car trouble and was only 25 minutes late. It is understandable that a judge would deny a motion if he were under the impression that counsel for the moving party did not care enough to show up at court and to make an argument. That was, however, a mistaken impression. Circumstances considered as a whole did not justify a conclusion assigning the fault to the lawyer. The creditors filed a motion for reconsideration the same day the judge denied the motion for enlargement.[14]

Although the excusable neglect rationale may not be available to excuse a failure to file within the initial time period,[15] we have found no authority suggesting that excusable neglect is not available to justify the grant of a motion for reconsideration filed on the same day that a timely filed motion for enlargement is denied. Such a rule would not be equitable. Therefore, we reject Farouki's arguments that the judge's denial of the Bank's motion for enlargement closed the applicable time period and that further action by the Bank was precluded by that denial.

II. *Farouki's Entitlement to Discharge*

Turning to the merits of Nasser Farouki's request for discharge, § 727 of the Bankruptcy Code allows debtors to receive a general discharge of their obligations in keeping with the primary purpose of bankruptcy law, to give honest debtors a fresh start "unhampered by the pressure and discouragement of preexisting debt." *Lines v. Frederick,* 400 U.S. 18, 19, 91 S.Ct. 113, 114, 27 L.Ed.2d 124 (1970). However, certain provisions of § 727 prohibit discharge for those who "play fast and loose with their assets or with the reality of their affairs." *In re Tully,* 818 F.2d 106, 110 (1st Cir.1987). The Bank has objected to Farouki's discharge on several grounds. The bankruptcy court denied his discharge under §§ 727(a)(2), (a)(3), (a)(4)(A), and (a)(5) of the Bankruptcy Code.

■■■ The Bank had to assume the burden of proving its objection to the discharge under Bankruptcy Rule 4005. Although the burden may shift to the debtor to provide satisfactory, explanatory evidence once the creditor has established a *prima facie* case, the ultimate burden rests with the creditor.[16] *See In re Brooks,* 58 B.R. 462, 464 (Bankr. W.D.Pa.1986). Under *Combs v. Richardson,* 838 F.2d 112, 116 (4th Cir.1988), the standard of proof in a discharge action is the preponderance of the evidence.[17] The bankruptcy

929. *Contra In re Harvey,* 143 B.R. 1 (Bankr. D.D.C.1992) (rejecting *Riso*'s reliance on the equitable power of the court to override Rule 4007(c)).

In both *Riso* and *Anwiler,* the court exercised its equitable powers to correct its own mistakes and extended the original deadline for filing. In the instant case, the Bank met the original deadline, filing a motion for enlargement of time on the sixtieth day. It was only for the hearing on that motion that the Bank failed to arrive at the courthouse on time, arriving, due to transportation difficulties, 25 minutes late.

14. Farouki claims the bankruptcy court dismissed the Bank's motion for extension of time on the merits. Farouki reasons that the bankruptcy court had the benefit of briefs from both parties and oral argument from Farouki's counsel before it denied the Bank's motion for extension of time. However, because the bankruptcy court later granted the Bank's motion for reconsideration after the Bank's counsel explained his earlier car troubles, it appears that the earlier denial of the Bank's motion for extension of time stemmed solely from the failure of the Bank's counsel to appear at the earlier hearing.

15. *See Santos,* 112 B.R. at 1008 (holding that "there is no discretion to enlarge the time periods at issue on the basis of excusable neglect when the request is made after the time period has expired").

16. "While the burden of persuasion rests at all times on the creditor objecting to discharge, it is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a *prima facie* case. The creditor's burden of persuasion does not obviate the necessity that the debtor provide a satisfactory explanation of the loss of his assets." *In re Reed,* 700 F.2d 986, 992–93 (5th Cir.1983).

17. *Combs* deals with § 523 rather than § 727. Here, as in many of the other cases, it seems appropriate to reason by analogy. We have written, "The Bankruptcy Code is silent as to the standard of proof necessary to establish the exceptions to discharge in § 523. In the face of this silence, courts may not imply a higher standard than the preponderance standard normally applied in civil proceedings." *Id.* at 116. The Code is likewise silent as to the standard of proof required in an action under § 727. In § 727 proceedings, then, as in § 523 proceedings, creditors must prove their assertions by a preponderance of the evidence.

court's findings of fact should not be set aside unless they are clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses. Bankruptcy Rule 8013; *accord Williamson v. Fireman's Fund Ins. Co.,* 828 F.2d 249, 251 (4th Cir.1987).

■ Involved is an application for general discharge. A party objecting to discharge need prove only one of the grounds for non-dischargeability under § 727(a) because the provisions of § 727(a) are phrased in the disjunctive. Proof of conduct satisfying any one of the sub-sections is enough to justify a denial of a debtor's request for a discharge. In *In re Shumate,* 55 B.R. 489, 495 (Bankr. W.D.Va.1985), the court denied discharge based on § 727(a)(2) and stated that it did not need to address the issues implicated by the creditor's remaining allegations under eight other sub-paragraphs of § 727. In *In re Moore,* 89 B.R. 935, 937 (Bankr.M.D.Fla. 1988), the court denied a debtors' discharge pursuant to § 727(a)(5) and stated that it was unnecessary to rule on the other claims set forth in the creditor's complaint including § 727(a)(4) and (a)(2). *Accord, In re Reed,* 700 F.2d 986, 989 (5th Cir.1983) (either § 727(a)(2) or § 727(a)(5) would suffice for denial of discharge). Hence, of the four items contained in the general discharge claim, denial of discharge for any one will eliminate the need for consideration of the other three.

■ Considering the largest of the four, the Bank has argued that Farouki was a shareholder in Dina prior to the time he filed for bankruptcy. In support of that argument, the Bank has offered both the original Guaranty Agreement in which each brother represented himself as a principal shareholder in Dina and the First Amendment to the loan agreement which Nasser Farouki read and signed. The schedule of assets which Nasser Farouki filed in connection with his bankruptcy petition indicated that he was not a shareholder of Dina at the time he filed. He has denied that he ever owned stock in Dina, but the only proof offered has been his

own uncorroborated testimony. The bankruptcy judge did not find him to be a credible witness. Nasser Farouki testified that his brother Fawaz has always been the sole shareholder of Dina, but he did not produce his brother to testify, nor did he produce any records from the company to resolve the issue of stock ownership. While Nasser Farouki did not bear the ultimate burden of proof on the issue, the Bank established a *prima facie* case with regard to the stock, and, thereupon, the burden shifted to Farouki to provide explanatory evidence, to the satisfaction of the court, rebutting the presumption raised by the plaintiff's *prima facie* case.

■ 11 U.S.C. § 727(a)(4)(A) provides: "The court shall grant the debtor a discharge, unless—the debtor knowingly and fraudulently, in or in connection with the case—made a false oath or account." 11 U.S.C. § 727(a)(5) reads: "The court shall grant the debtor a discharge, unless—the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."[18] Nasser Farouki's actions justified the bankruptcy court's finding that both of those provisions foreclosed discharge. The bankruptcy court found, *inter alia:*

1. In March of 1984, Fawaz and Bassim Farouki represented to Dubai Bank that they, along with Nasser, were the principal shareholders of Dina.

2. The Guaranty Agreement that Nasser allowed Bassim to sign on his behalf contained the statement that each of the Guarantors "is a principal shareholder of the capital stock of Dina."

3. A draft of the Agreement was sent to Debtor and his counsel before it was executed, and neither the Debtor nor his counsel requested a deletion or alteration of the document.

4. After the first default on the loan, the brothers sent a combined personal financial statement to the Bank indicating that the three of them owned 100% of Dina, a company worth approximately 10 million dollars at the time.

---

**18.** "Section 727(a)(5) is broadly drawn and clearly gives a court broad power to decline to grant a discharge in bankruptcy where the debt-

or does not adequately explain a shortage, loss, or disappearance of assets." *In re Martin,* 698 F.2d 883, 886 (7th Cir.1983).

5. The debtor signed an amendment to the loan agreement with the assistance of three attorneys in May 1985. The amendment was accompanied by an affidavit with a copy of the original Guaranty Agreement attached to it. The debtor reviewed and signed these documents personally.

6. The debtor did not call his brother to testify as to Fawaz' sole ownership of the stock.

7. The debtor did not produce any documentation susceptible of authentication that would support his testimony that he never owned stock in Dina.

Based on all of the evidence and taking into account the credibility of the witnesses, including the debtor, the bankruptcy court found that the debtor owned stock in Dina prior to his bankruptcy filing, and that the Bank presented a *prima facie* case under § 727(a)(5). The Bank established that Farouki represented himself as a shareholder in Dina and suggested that he had failed to account for the loss of that stock. At that point, the burden shifted to Farouki as the debtor satisfactorily to explain the loss of his Dina stock or to prove that, contrary to the evidence submitted by the Bank, he never owned any Dina stock. The question of whether a debtor satisfactorily explains a loss of assets is a question of fact. *In re Chalik*, 748 F.2d 616, 619 (11th Cir.1984). The findings of the bankruptcy court must be accepted unless clearly erroneous, particularly when they have been affirmed by the district court. *Id.* Nasser Farouki offered only his own uncorroborated testimony which the bankruptcy court did not find credible. The findings were not clearly erroneous.

The court denied Farouki's discharge under both § 727(a)(4)(A) and (a)(5). Nasser Farouki has claimed that the ruling was inconsistent, and that such inconsistency constitutes reversible error. However, the findings are not in conflict with one another. The bankruptcy court did not find that Nasser Farouki owned and did not own the stock simultaneously. Rather, the bankruptcy court found that the Bank met its burden of establishing that Nasser Farouki owned the stock. If he owned the stock prior to the filing, he must have either sold or otherwise disposed of that stock or else retained ownership of it. Under § 727(a)(5), Nasser Farouki did not explain what happened to the asset, nor did he convince the court that he had never been in possession of the Dina stock. As for § 727(a)(4)(A), the court found that Farouki owned stock in Dina. Farouki did not rebut that finding adequately. The court found that his failure to disclose such ownership in Dina was made with fraudulent intent. The omission was material because it was relevant to the debtor's business transactions, estate and assets.[19]

The district court did not err in affirming the bankruptcy court's denial of Farouki's request for discharge under § 727(a)(5). Because Nasser Farouki sought a general discharge, we need not and should not address the separate issues raised under §§ 727(a)(2), (a)(3), and (a)(4)(A).

The judgment is, accordingly,

*AFFIRMED.*

---

19. Nasser Farouki's argument that the Dina stock would have been worthless at the time of filing is irrelevant to a disposition under § 727(a)(4)(A). *Chalik* held that false oaths regarding worthless assets can constitute material omissions and noted supporting decisions in the First and Second Circuits. In *Williamson*, 828 F.2d at 252, we found that the debtor's false statements "related to material matters in that they concerned the existence and disposition of [the debtor's] property." We supported that statement with similar language in *Chalik*.