In the Matter of Cheryl L. BOUGHNER d/b/a Diet Center, Debtor.

**Bill KIRK, Plaintiff,**

v.

**Cheryl L. BOUGHNER, Defendant.**

**Bankruptcy No. 93–896–C.**
**Adv. No. 93–93099.**

United States Bankruptcy Court, S.D. Iowa.

Oct. 19, 1994.

Bill Kirk, pro se.

Michael R. Brown, Morrissey & Brown Law Firm, Fairfield, IA, for defendant/debtor.

## ORDER—COMPLAINT OBJECTING TO DISCHARGE

RUSSELL J. HILL, Bankruptcy Judge.

On April 19, 1994, the Complaint Objecting to Discharge came on for trial. Plaintiff, Bill Kirk, appeared pro se. Defendant/Debtor, Cheryl L. Boughner, was represented by her attorney, Michael R. Brown.

At the conclusion of the hearing, the Court took this matter under advisement upon a briefing deadline. Post-trial briefs have been filed and the Court now considers this matter fully submitted.

This is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(J). The Court, upon review of the pleadings, briefs, and arguments of counsel, now enters its findings of fact and conclusions of law pursuant to Fed. R.Bankr.P. 7052.

### FINDINGS OF FACT

1. Defendant owned and operated a business known as the Fairfield Diet Center. This business was purchased from Barbara Yoder in August 1991.

2. In February, 1992, Defendant first approached David Sommer, a loan broker and accountant in Fairfield, Iowa, about a $5000 business expansion loan, which she planned to repay out of business revenue. Mr. Sommer was involved in a business known as Mr. Cashflow.

3. Defendant was approved for the loan and the $5000 loan was made to Defendant. However, she was unable to repay the loan and sought a second loan through Mr. Sommer to pay off the first loan.

4. Plaintiff contacted Mr. Sommer in July 1992, and inquired about loan investment opportunities. Mr. Sommer informed Plaintiff that Defendant wanted to borrow $6,000 for three months to finance her business, the Fairfield Diet Center.

5. On July 17, 1992, Plaintiff, Defendant, Mr. Sommer, and Plaintiff's secretary, Ann Kesselring, met in Mr. Sommer's office to discuss the possibility and terms of a loan.

6. During this meeting the parties discussed a loan in the amount of $6,000 at a

40% interest rate. The parties also discussed how the loan would be repaid.

7. Defendant stated that the loan would be repaid from the proceeds of the sale of the Diet Center which she was in process of selling to Sheryl Higgins, the manager of the Diet Center. Defendant agreed to have her attorney put a clause in the purchase agreement acknowledging that the debt to Plaintiff was to be paid from the proceeds of the sale. Defendant also agreed to send Plaintiff a copy of the purchase agreement.

8. The parties also discussed Defendant's credit history and Defendant stated that she had no concerns about her ability to repay the loan as she had the assets of the business.

9. On July 17, 1992, a promissory note for the amount of $6,000 was executed by Bill Kirk and Cheryl Boughner. The promissory note stated that the interest rate would be 40% flat per annum and that "payment of entire principle plus accrued interest is due 3 months from today on October 16, 1992." The promissory note also stated as follows:

Borrower has option to repay this note prior to expiration of the note with 1 month's notice or a minimum 1 month's prepayment penalty of interest is payable. This rate must be repaid upon sale of Fairfield Diet Center (expected to Sheryl Higgins).

10. Written across the bottom of the promissory note and initialled by Defendant was the following:

Lender and borrower agree that option exists for both to agree to extend if appropriate. Security on this note is 1) Fairfield Diet Center—accounts receivable inventory, supplies, furniture, and fittings and general intangibles now owned or future acquired and 2) motor vehicle—Chrysler, Cordoba CRSP22 license plate # VNC589,86.

11. The security interest in the business assets was never properly perfected.

12. Defendant testified that, at the time of the loan, she thought the value of the business was approximately $7500.

13. On August 24, 1992, Defendant sold The Fairfield Diet Center to Sheryl Higgins. The purchase price for the Diet Center was $1,150. The proceeds were paid to Barbara Yoder against the debt on Defendant's original purchase of the business.

14. No other efforts to sell or offers were made for the purchase of the business. Defendant testified she felt she had no option but to accept this offer or close the business.

15. The Sale of Subfranchise Business Agreement executed by Defendant and Sheryl Higgins provided that the Buyer would buy the Diet Center free from liabilities and encumbrances except as therein listed. The contract did not list the liability to Plaintiff nor did it include any clause stating that Plaintiff's loan was to be paid back before the sale was final.

16. Defendant did not tell Sheryl Higgins about the security interest held by Plaintiff in the Diet Center and Sheryl Higgins did not learn about the loan until after the sale was completed.

17. Defendant did not make any payments to Plaintiff as agreed under the terms of the loan nor did she inform him of the sale of the business.

18. After the sale, Plaintiff contacted Defendant's attorney and learned of the sale of the Diet Center. On October 6, 1992, Plaintiff sent a letter to Defendant's attorney informing him of Defendant's verbal agreement to have her attorney insert a clause in the purchase agreement of the Diet Center stating that the sale would not be final until the loan was paid.

19. On April 5, 1993, Defendant filed for relief under Chapter 7 of the U.S. Bankruptcy Code.

20. The motor vehicle subject to the security interest of Plaintiff was never turned over to Plaintiff by Defendant. The vehicle was destroyed in an accident while driven by a third party after the bankruptcy petition was filed. Plaintiff failed to turn over the damaged car to Plaintiff, but instead sold the car for parts.

21. Plaintiff filed this Complaint Objecting to Discharge on July 12, 1993.

## DISCUSSION

Plaintiff filed a complaint objecting to discharge on the grounds that the sale of the Fairfield Diet Center was an attempt by Defendant to hinder, delay and defraud creditors. Plaintiff argues that Defendant should, therefore, be denied a discharge pursuant to 11 U.S.C. § 727(a)(2) which provides as follows:

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay or defraud

a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate after the filing of the petition.

 Bankruptcy statutes serve a twofold purpose—"first, to secure the equitable distribution of the bankrupt's estate among his creditors, and second, to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *In re Devers*, 759 F.2d 751, 754–55 (9th Cir. 1985) (citations and quotations omitted). However, the more specific purpose of § 727(a)(2)A) is "to deny a discharge to those debtors who, intending to defraud, transfer property of the bankrupt estate." *In re O'Connor*, 32 B.R. 626 (Bankr.E.D.Penn. 1983).

 Plaintiff bears the burden of establishing the necessary elements of § 727(a)(2)(A). *In re Brooks*, 58 B.R. 462 (Bankr.W.D.Penn.1986). Although the burden of going forward may shift after Plaintiff establishes a prima facie case, the ultimate burden of persuasion remains upon Plaintiff. *Id.*

Prior to the U.S. Supreme Court's decision in *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), there was a split among the circuits as to whether the appropriate burden of proof for determination of denial of discharge under § 727 was the clear and convincing standard or the preponderance of the evidence standard. In *Grogan,* the Supreme Court held that the preponderance of the evidence standard is the appropriate standard of proof which must be met in order to prevent a discharge of a debt under § 523(a). *Grogan,* 498 U.S. at 287, 111 S.Ct. at 659. The Court rejected the argument that a debtor has a "fundamental right to a discharge" and noted:

Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between the litigants, we presume that this standard is applicable in civil actions between private litigants "unless particularly important individual interests or rights are at stake".

*Id.* (citation omitted).

The Court, in dictum, went so far as to state that the standard of proof for denial of discharge pursuant to § 727(a)(4) is the preponderance of the evidence standard. *Grogan,* 498 U.S. at 287–89, 111 S.Ct. at 660, (citing H.R.Rep. No. 95–595, p. 384 (1977) and S.Rep. No. 95–989, 2nd Sess. at p. 98 (1978), U.S.Code Cong. & Ad.News 1978, pp. 5787, 5884, 6340). Since the *Grogan* decision, several courts have reversed their prior holdings on the basis of the reasoning of *Grogan* and held that a preponderance of the evidence standard is sufficient in § 727 issues. *See In re Serafini*, 938 F.2d 1156, 1157 (10th Cir.1991); *In re Farouki*, 14 F.3d 244, 250, n. 17 (4th Cir.1994); *In re Adams*, 31 F.3d 389 (6th Cir.1994); *In re Cook*, 126 B.R. 261, 265–266 (Bankr.E.D.Tex.1991); *In re Sumpter*, 136 B.R. 690, 695 (Bankr.E.D.Mich. 1991), *aff'd*, 170 B.R. 908 (E.D.Mich.1994); *In re Wolfson*, 139 B.R. 279, 283 (Bankr. S.D.N.Y.1992), *aff'd*, 152 B.R. 830 (S.D.N.Y. 1993); *In re Hiller III*, 148 B.R. 606, 612 (Bankr.D.Colo.1991); *In re Metz*, 150 B.R. 821, 824 (Bankr.M.D.Fla.1993); and *In re Silverstein*, 151 B.R. 657, 660 (Bankr. E.D.N.Y.1993). The Eighth Circuit has not yet ruled on this issue.

■ This Court agrees with the holdings of the above decisions and finds that based upon the reasoning of the U.S. Supreme Court in *Grogan*, the preponderance of the evidence standard is the proper standard of proof in § 727 dischargeability determinations.

■ In order to deny a discharge, a Plaintiff must prove the following elements by a preponderance of the evidence: 1) a transfer of property; 2) belonging to the debtor; 3) within one year of filing of the petition; 4) with intent to hinder, delay or defraud a creditor or officer of the estate. *In re Chastant*, 873 F.2d 89, 90 (5th Cir.1989).

Generally, the first three elements are not difficult to determine and are not at issue in this case. The Court finds that the Diet Center belonging to Defendant was sold within one year of the filing of the bankruptcy petition. The first three elements are, therefore, satisfied.

■ However, the fourth element can be a troublesome burden to prove and is more complicated to determine. Actual intent to hinder, delay or defraud must be shown; constructive fraudulent intent cannot be the basis of a denial of discharge. *Devers*, 759 F.2d at 753. Because a debtor is unlikely to testify directly that the intent was fraudulent, actual fraudulent intent may be determined by circumstantial evidence, or inferences drawn from a course of conduct. *Id.* at 754 (citations omitted).

■ The following factors may evidence actual intent to defraud under § 727(a)(2)(A):

1) the lack or inadequacy of consideration; 2) the family, friendship, or close associate relationship between the parties; 3) the retention of possession, benefit, or use of the property in question; 4) the financial condition of the party sought to be charged both before and after the transaction in question; 5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties or pendency or threat of suits by creditors;

and 6) the general chronology of the events and the transactions in question.

*Chastant*, 873 F.2d at 91 (citations omitted).

■ In the case at hand, Plaintiff argues that Defendant's intent to defraud may be inferred by the circumstances of the sale. He contends that Defendant's fraudulent intent is evidenced by the sale of the Diet Center to Sheryl Higgins for inadequate consideration; Defendant's failure to inform Sheryl Higgins of the security interest; the failure to include a due upon sale clause in the purchase agreement; and, the failure of Defendant to send a copy of the purchase agreement to him as agreed. He also argues that Defendant's refusal to turn over the motor vehicle and the subsequent sale of the wrecked vehicle are additional evidence of her intent to defraud him.

Defendant argues that Plaintiff has failed to prove that she possessed actual intent to defraud in the transfer of the Diet Center. She attempts to explain her actions by testifying that she was going through a crisis in her family at the time of the sale. Additionally, she testified that she believed that she had no other option, but to sell the Diet Center to Sheryl Higgins at the offered price. She further attributes her failure to inform Sheryl Higgins and provide the requested clause in the purchase agreement to negligence and mistake.

After consideration of all of the evidence and testimony of the witnesses, the Court finds that Plaintiff has sustained his burden in proving by a preponderance of the evidence that Defendant intended to defraud him when she transferred the Diet Center to Sheryl Higgins, her former employee and manager.

The Diet Center was transferred for only $1150, although Defendant testified she felt it was worth approximately $7500 only five weeks before at the time of the loan. Defendant offered no evidence of an effort to solicit other offers, nor to increase the purchase price. She instead sold the business to her former employee for a fraction of what she felt it was worth.

Although she had signed the loan papers only a short time before, Defendant did not

inform Sheryl Higgins of the loan nor of the security interest in the business. She failed to include the promised clause and she failed to notify Plaintiff of the transaction as agreed. The Court recognizes that Defendant may have been going through a difficult period in her life. However, based on the testimony, demeanor and credibility of Defendant as a witness, the Court finds that, as a businesswoman, she not only understood the implications of the loan documents and the security agreement, but she intentionally withheld the information from Sheryl Higgins and failed to include the agreed-upon clause. While Plaintiff may have failed to properly perfect his security interest, the security agreement was still valid between the parties. Iowa Code § 554.9201. Therefore, the Court finds that it may infer from these actions and from the conduct of Defendant, that she intentionally transferred the property with an intent to defraud Plaintiff.

Moreover, the Court may look at other conduct to determine actual fraudulent intent. The Court finds that Defendant's failure to turn over the motor vehicle used as additional security for the loan, shows further evidence of this intent. After the vehicle was wrecked by a third party, Defendant continued to refuse to turn it over to Plaintiff for salvage value, but instead sold it herself and kept the proceeds.

Accordingly, the Court finds that Defendant should be denied a discharge pursuant to § 727(a)(2)(A).

### ORDER

IT IS THEREFORE ORDERED that Plaintiff's Objection to Discharge is sustained.

IT IS FURTHER ORDERED that the debtor, Cheryl L. Boughner, shall be denied a discharge pursuant to 11 U.S.C. § 727(a)(2)(A).