**In re David G. ST. CLAIR, Debtor.**

**KEMBA ROANOKE FEDERAL CREDIT UNION, Plaintiff,**

v.

**David G. ST. CLAIR, Defendant.**

**Bankruptcy No. 7–94–02437–HPR–7.
Adversary No. 7–95–00020.**

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Feb. 1, 1996.

784

Peter A. Katt, Roanoke, Virginia, for debtor/defendant.

John R. Patterson, Roanoke, Virginia, for plaintiff.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

This Adversary Proceeding was filed by KEMBA Roanoke Federal Credit Union ("KEMBA" or "Creditor"), objecting to and seeking denial of the discharge of David G. St. Clair ("Debtor") pursuant to 11 U.S.C. § 727. The alleged acts of this proceeding is whether the Debtor fraudulently transferred or concealed property; failed to keep records making it impossible for creditors to ascer-

tain his financial condition; and whether Debtor knowingly and fraudulently made a false oath or account in his schedules and statement of financial affairs. For the reasons hereinafter stated, pursuant to Bankruptcy Rule 4005, the Court holds that the Creditor has not met the standard of proof to deny Debtor's discharge.

The Debtor filed his Chapter 7 Petition on November 3, 1994. The Debtor listed in his schedules the unsecured nonpriority claim of Kemba Credit Union for the amount of $6,800.00 and KEMBA timely filed a Proof of Claim. KEMBA subsequently filed this Adversary Proceeding objecting to the discharge of the Debtor pursuant to 11 U.S.C. § 727(a). The Complaint raises several issues—primarily alleging that Debtor's schedules and statement of financial affairs, originally filed with his petition, were incomplete. The Creditor's contentions are that Debtor omitted KEMBA as a creditor to whom payments were made 90 days prior to the Petition; that the Debtor had not listed the June 15, 1994 sale of his residence; that he had not listed a car trailer as personal property and as property claimed exempt; that he did not list receipt of $16,292.00 from his Grand Piano & Furniture profit-sharing account; and that he did not disclose that this money was stolen. The Debtor acknowledges that his schedules and statement of financial affairs originally filed with his petition were incomplete, but that such were never made "knowingly" or "fraudulently" to warrant the denial of his discharge.

■ As an initial matter, the Court notes that the Bankruptcy Code generally is to be liberally construed in favor of the debtor. *See Williams v. US F & G*, 236 U.S. 549, 35 S.Ct. 289, 59 L.Ed. 713 (1915); *Roberts v. W.P. Ford & Son Inc.*, 169 F.2d 151, 152 (4th Cir.1948) (*citing Johnston v. Johnston*, 63 F.2d 24, 26 (4th Cir.1933) and *Lockhart v. Edel*, 23 F.2d 912, 913 (4th Cir.1928)). This universally recognized principle serves to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (citations omitted). This same "honest but unfortunate debtor" is thus provided with "a new opportunity in life and a clear field for future effort, unhampered by

the pressure and discouragement of preexisting debt." *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755, 764, 765 (1991); *Perez v. Campbell,* 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233, 241 (1971); *Local Loan Co. v. Hunt,* 292 U.S., at 244, 54 S.Ct. at 699; *Johnston v. Johnston,* 63 F.2d at 26; *Royal Indemnity Co. v. Cooper,* 26 F.2d 585, 587 (4th Cir.1928).

This Court, upon trial of this matter, heard the evidence including the testimony of the witnesses. It observed the candor, demeanor, truthfulness, and forthright testimony of witnesses as well as their credibility and makes the findings and conclusions herein.

Section 727 provides that the Court must grant a discharge to a Chapter 7 debtor unless one of the requirements are met for the denial. The Creditor's first objection is under § 727(a)(2)(A) in which it must prove that the act complained of was done within one year before the filing of the petition "with actual intent to hinder, delay, or defraud a creditor . . . by the debtor or his duly authorized agent" and that the act consisted of "transferring, removing, destroying or concealing the debtor's property. . . ." 11 U.S.C. § 727.

█ Pursuant to Bankruptcy Rule 4005, the burden of proof is on the Plaintiff to prove that the Debtor's alleged conduct falls within the parameters of § 727(a)(2)(A). In light of the Supreme Court decision of *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), the standard for the burden of proof is the "preponderance of evidence" standard. Although Grogan focused on nondischargeability under § 523(a), the Fourth Circuit has adopted the same standard for discharge under § 727(a)(2). *See Farouki v. Emirates Bank Intern., Ltd.,* 14 F.3d 244 (4th Cir.1994); *Combs v. Richardson,* 838 F.2d 112, 116 (4th Cir.1988). Having heard the testimony of the Debtor

and witnesses, along with the facts and circumstances, the Court concludes that Plaintiff has failed to meet the required burden of proof.

█ The "intent to hinder, delay or defraud," requires actual intent as distinguished from constructive intent. *3 Collier on Bankruptcy,* ¶ 727.02 (15th Ed.1995). The Debtor amended his schedules and statement of financial affairs adding those items that were inadvertently omitted from the originals.[1] In examining the Debtor's testimony along with his deposition testimony, at the time of the filing of his original petition, Debtor was suffering emotional and mental problems. The Debtor has been under the care of a psychiatrist for several years due to his long-term depression. The Court heard testimony from a long-time acquaintance of Debtor, Roger Nolan, who had observed the Debtor a few weeks before he filed his petition in this Court. Mr. Nolan testified that the Debtor had been deeply depressed since the death of his wife and other relatives and, for the most part, was always in a daze.

The Debtor testified that he never intended to leave anything off the schedules. That since his wife died a few years ago, his mental and emotional conditions had deteriorated. He has been under the care of a psychiatrist, Dr. Luedkie, for several years due to his condition. He further stated in his deposition testimony that he had a 9th grade education and that he was unable to read and understand the entire circumstances at the time he signed his original documents. (*See Deposition Transcript,* p. 14). He stated that he has a "very bad loss of memory" and that he has "been under a lot of pressure." The Debtor said that he doesn't remember writing a lot of the information down. His stream of misfortune began on October 13, 1988, when his wife died, whom he married in

---

1. On December 7, 1994, the Debtor amended his schedules and statement of financial affairs listing KEMBA under the subtitle of "payments to creditors" as having paid $3,600.00 and owing $6,800.00. The Debtor removed the 1977 Corvette from the "Other Transfers" section and added it to his Schedules B and C. He further added to "Other Transfers" the sale of his residence on June 15, 1994 in the amount of $15,-000.00 and added the car trailer valued at approximately $1,000.00 to his Schedules B and C.

On April 25, 1995, the Debtor amended his schedules and statements once again adding the $16,292.18.00 received from Grand Piano and Furniture. He also changed the proceeds amount of the sale of the residence to $17,-138.91. He added under "Losses" the $11,000–$12,000 that was allegedly stolen; and under subsection "Closed Accounts" he added First Union Bank and Bank of North Carolina.

the hospital about two weeks before. Subsequently, his mother passed away, then his father, also his mother-in-law, then his manager and close friend at Grand Piano, and then his brother-in-law. (*Deposition*, p. 15). Ironically, he signed his petition on the anniversary of his wife's death, October 13, 1994.

As for Creditor's contention regarding the sale of the residence, the Debtor testified at the deposition that the proceeds from the sale of his residence were used for several expenditures. He had used most of the money to build a new room onto his shop and to purchase an air compressor. The Debtor furnished the Creditor with a copy of a deposit ticket stamped June 17, 1994 showing $8,138.91 that was deposited into an account. (*Deposition*, p. 27). Debtor testified without contradiction that he paid some of his bills; he had basic living expenses and a truck payment. (p. 24). Prior to selling the residence, Debtor had to make some repairs which required receiving some loans for the remodeling. Most of the money was used to pay off the loans obtained to buy windows and carpet. There is nothing in the record to demonstrate that the Debtor used these funds with intent to hinder, delay, or defraud creditors.

■ In addressing Creditor's issue regarding the profit-sharing funds, the Debtor testified, again without contradiction, that he did not destroy, mutilate, transfer, or conceal the money received from his profit-sharing account with Grand Piano. He stated at trial and by deposition that the money had been stolen. The Debtor did not report the theft, but there is no evidence that he committed any act to intentionally hinder, delay, or defraud the Creditor. In light of the facts and circumstances, there is no substantial evidence that the Debtor actually intended to defraud, hinder, or delay the Creditor; thus, the Creditor does not meet the standard of proof for the denial of a discharge under 11 U.S.C. § 727(a)(2)(A).[2]

■ KEMBA's second contention is that the Debtor failed to keep or preserve books or records under § 727(a)(3). The Debtor's failure to keep records is not an absolute bar to discharge. *3 Collier on Bankruptcy* ¶ 727.03 (15th Ed.1994). *See also, Rameson Brothers v. Goggin*, 241 F.2d 271 (9th Cir. 1957). The proof must extend to show that the failure to keep such books or records made it impossible to ascertain the financial condition and transactions of the Debtor.

■ At the hearing, the Court heard testimony from Ms. Susan Reynolds, a collection agent for KEMBA. She testified that she attended the § 341 meeting and had opportunity to question the Debtor. The Debtor testified about the sale of the real estate in which he explained as before this Court that he had used some of the proceeds to build a new room onto his shop and that some was deposited into his account. Ms. Reynolds testified that KEMBA had a history of many years of transactions and dealings with the Debtor. KEMBA had knowledge of the sale of the real estate because they held the Deed of Trust thereon and received payment in full upon the sale of the property. They had also financed a car trailer for the Debtor, which he also had paid off in September, 1994. Ms. Reynolds further testified that she was aware of the profit-sharing agreement with Grand Piano at the time of the § 341 meeting. In fact, it appears to the Court that KEMBA knew more about, and was more familiar with, the Debtor's financial affairs than the Debtor himself. The fact that they knew about the real estate transaction, the profit-sharing agreement and the car trailer, defies reason to think that the Debtor would actually try to mislead the Creditor when they had full knowledge of these transactions. The Debtor in nowise attempted to suppress any facts regarding these matters. This simply negates the fact that, in his mental state, he intended to defraud, hinder, or delay creditors. At the deposition the Debtor was asked if he did not want his creditors to know about the sale of his real estate. He answered "No, sir. I knew if anybody would know about it, KEMBA would." (*Deposition*, p. 18).

In the case of *Bennett v. W.T. Grant*, 481 F.2d 664 (4th Cir.1973), although decided on

---

**2.** The Court notes that § 727(c)(d) and (e) charges the trustee to take appropriate action concerning the issuance of or revocation of discharges. The trustee here apparently elected not to pursue any action under the circumstances herein prevailing in his considered judgment of the facts presented.

a different issue, the Fourth Circuit alludes to the fact that a creditor who has knowledge of a certain transaction will not be treated as not having such knowledge. In this case, the Court of Appeals remanded for further hearing to determine the knowledge of the creditor. They held that "Debtor had willfully and maliciously converted the store's property ..." but that if the store acquired knowledge of the conversion and acquired such knowledge when they could have asserted its security interest ... "the indebtedness was properly to be discharged even though the purchaser's conversion was willful and malicious." *Id.* at 664. They further stated that "a bankruptcy court is a court of equity and in a case such as this should be guided by equitable principles." *Id.* at 666. *See Young v. Higbee Co.*, 324 U.S. 204, 65 S.Ct. 594, 89 L.Ed. 890 (1945); *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

■ Finally, the Creditor contends that the Debtor should be denied a discharge under § 727(a)(4)(A) if he "knowingly and fraudulently, in or in connection with the case ... made a false oath or account." *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249 (4th Cir.1987). Again, Bankruptcy Rule 4005 places the burden of proof on the Plaintiff to show the elements necessary to sustain the allegations. There is insufficient evidence to show that the omissions from the schedules and statements of financial affairs were anything more than inadvertent due to his state of mind and were not "knowingly and fraudulently" omitted.

The Court observed the credibility and demeanor of the Debtor as he testified and explained the theft of the money from the profit-sharing agreement and his mental state when he filed his bankruptcy Petition. He specifically told the Court that the money had been stolen from his chest of drawers and this was devastating to him, considering his financial turmoil. There is nothing in the record to show that his testimony is not true since the Debtor does not have a lavish lifestyle but rents a shop to operate his mechanic business and lives in a one-room apartment located at his shop, which is not secured but is virtually open to the public. The Court finds no evidence under the facts and circumstances here to show that the Debtor knowingly and willfully made a false oath or account.

Thus, in light of *Grogan v. Garner* and *Farouki v. Emirates Bank Intern., Ltd.*, the Plaintiff has not met the burden of proof that it was the Debtor's intent to delay, defraud, or hinder a creditor, within one year of the filing of his Petition; nor has it proven that the Debtor destroyed, mutilated, or concealed records making it impossible for Creditor to be aware of any transactions. Finally, the Creditor has not met the burden of proof that the Debtor fraudulently and knowingly made a false oath or account pursuant to 11 U.S.C. § 727(a). In accordance with Bankruptcy Rule 4005 and the standard of proof required, the burden has not been sustained.

Accordingly, it is ORDERED, that the Complaint be, and is, dismissed and closed, with each party to bear their respective costs. Under the circumstances, the Court reluctantly declines to require that fees and costs be assessed against Plaintiff.

Service of a copy of this Memorandum Opinion and Order shall be made by mail to the Debtor; counsel for Debtor/Defendant; counsel for Plaintiff; Trustee; and U.S. Trustee.