**In re Stanley WOLFSON, Debtor.**

**Alan NISSELSON, as Trustee, Plaintiff-appellee,**

v.

**Stanley WOLFSON, Defendant-appellant.**

**Judith Ripps WOLFSON, Plaintiff-appellee,**

v.

**Stanley WOLFSON, Defendant-appellant.**

**No. 92 Civ. 4567 (CSH).**

United States District Court, S.D. New York.

March 23, 1993.

Brauner Baron Rosenzweig & Klein (Robert Minkoff, of counsel), New York City, for trustee plaintiff-appellee.

Jill Lesser, New York City, for plaintiff-appellee Judith Ripps Wolfson.

Phillip Mann, New York City, for debtor defendant-appellant.

## MEMORANDUM OPINION

HAIGHT, District Judge:

Debtor-defendant Stanley Wolfson appeals from a judgment of the United States Bankruptcy Court for the Southern District of New York (Burton R. Lifland, *Chief Judge*) granting summary judgment to plaintiffs Alan Nisselson, the bankruptcy trustee, and Judith Ripps Wolfson, which

denied the debtor-defendant a discharge in bankruptcy. 139 B.R. 279 (1992).

### Background

On January 23, 1990, Wolfson filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Alan Nisselson was appointed trustee of the debtor's estate. Nisselson thereafter became a plaintiff in the adversary proceeding from which this appeal was taken. The other plaintiff, Judith Ripps (formerly known as Judith Ripps Wolfson), is involved in divorce proceedings with the debtor.

After proceedings in the bankruptcy court which I need not describe in detail, plaintiff Nisselson as trustee commenced an adversary proceeding against the debtor by filing a complaint dated May 2, 1990. Plaintiff Judith Ripps Wolfson (hereinafter "Ripps") filed a complaint against the debtor dated May 7, 1990. Both complaints object to the discharge of the debtor, and pray for judgment pursuant to § 727(a) of the Bankruptcy Code, 11 U.S.C. § 727(a), denying the debtor a discharge in bankruptcy.

Specifically, the trustee's complaint alleged as a first claim for relief that the debtor, Wolfson, had concealed or failed to keep or preserve any recorded information from which his financial condition or business transactions might be ascertained.

As a second claim for relief, the trustee alleged that Wolfson had knowingly and fraudulently withheld recorded information relating to his property and financial affairs from officers of the estate entitled to possession of such information.

As a third claim for relief, the trustee alleged that Wolfson had refused to obey a lawful order of the bankruptcy court. It appears from the motion papers that the order in question related to Wolfson moving out of a certain co-operative apartment.

Ripps's complaint mirrored that of the trustee, specifying in the pleading the particular sub-sections of the Bankruptcy Code upon which she relied. Thus Ripps's first claim for relief invokes § 727(a)(3); her second claim for relief invokes § 727(a)(4)(D); and her third claim for relief invokes § 727(a)(6)(A).

On November 25, 1991, the plaintiffs moved jointly for summary judgment under Rule 56, Fed.R.Civ.P., made applicable to adversary proceedings in bankruptcy by Fed.R.Bank.P. 7056. Plaintiffs sought summary judgment denying the discharge of Wolfson as debtor, relying in their motion papers upon 11 U.S.C. § 727(a)(3), (4), (5) and (6). Wolfson opposed plaintiffs' motion for summary judgment and cross-moved for discovery under Rule 37, Fed. R.Civ.P., made applicable to the adversary proceeding by Bankruptcy Rule 7037.

In a written opinion, Chief Judge Lifland granted plaintiffs' motion for summary judgment and denied Wolfson a discharge in bankruptcy. He based his decision upon § 727(a)(3), (4), and (5), regarding it as "unnecessary to decide whether the § 727(a)(6) grounds for denial of discharge have also been met." 139 B.R. at 289. Wolfson appeals.

### Discussion

Under Fed.R.Civ.P. 56(c), the moving party is entitled to summary judgment if the papers "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On such a motion, "a court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Knight v. U.S. Fire Insurance*, 804 F.2d 9, 11 (2d Cir.1986) (citation omitted), *cert denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). "All justifiable inferences are to be drawn in [the nonmovant's] favor," *Eastman Kodak Co. v. Image Technical Servs., Inc.*, — U.S. —, —, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)), but the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). While the party resisting summary judgment must show a dispute of fact, it must also be a material fact in light of the substantive law. As the Supreme

Court has held, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court may refuse the motion or order a continuance for discovery if it appears from the opposing affidavits that the non-movant "cannot for reasons stated present by affidavit facts essential to justify" the opposition. R. 56(f).

On this appeal from a grant of summary judgment, the scope of review is well settled. *See Sulewski v. Federal Express Corp.*, 933 F.2d 180, 182 (2d Cir.1991):

> Our review of summary judgment decisions follows a familiar pattern: review is *de novo, Burtnieks v. City of New York*, 716 F.2d 982, 985 (2d Cir.1983); we view the evidence in the light most favorable to the non-moving party, *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 45 (2d Cir.1988); the moving party is entitled to summary judgment if he can "show that there is no genuine issue as to any material fact[,]" Fed.R.Civ.P. 56(c); and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.E.2d 202 (1986).

In this case, the governing law is furnished by those provisions of the Bankruptcy Code pursuant to which the bankruptcy court granted summary judgment to plaintiff. They are found in 11 U.S.C. § 727(a)(3), (4) and (5), which provide in pertinent part:

> "(a) The court shall grant the debtor a discharge, unless—
>
> \*    \*    \*    \*    \*    \*
>
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case,

> (4) the debtor knowingly and fraudulently, in or in connection with the case—
>
> (A) made a false oath or account;
>
> (B) presented or used a false claim;
>
> (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
>
> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;
>
> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities; ..."

In a carefully reasoned opinion, Chief Judge Lifland concluded that the preponderance of evidence standard, which the Supreme Court applied to the prevention of the discharge of a debtor under § 523(a) of Bankruptcy Code in *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), also applies to comparable proceedings under § 727. I agree with the bankruptcy court's analysis, which the parties do not appear to challenge on this appeal. It follows that the plaintiffs at bar are required to show by a preponderance of the credible evidence the factual elements necessary to deny Wolfson a discharge in bankruptcy under the cited subsections of § 727, except that Wolfson bears the burden of proving that any act or failure falling within § 727(a)(3) "was justified under all of the circumstances of the case." Within the context of summary judgment under Rule 56, plaintiffs must show that there is no genuine issue as to any material fact with respect to these elements.

Although separately stated, the acts or omissions on the part of a debtor condemned by subsections (3), (4) and (5) may be interrelated. Thus a debtor who has concealed pertinent recorded information under subsection (3) may well have made a false oath or account, or withheld from the trustee information the latter was entitled

to possess, in violation of subsections (4)(A) and (D), and in consequence have failed to explain satisfactorily any loss or deficiency of assets, in violation of subsection (5).

The evidentiary material available to the bankruptcy court on plaintiffs' summary judgment motion consisted of affidavits of the trustee, the debtor, and counsel for plaintiff Ripps; contemporaneous exchanges of correspondence between the trustee and the debtor reflecting the trustee's efforts to obtain documents relating to Wolfson's property and financial affairs; the transcript of Wolfson's deposition; and various documents generated as exhibits during these activities. Having considered this evidentiary material, the bankruptcy court concluded that plaintiffs were entitled to summary judgment on three of the four § 727 bases which they asserted. As noted, the bankruptcy court did not reach the fourth asserted ground, namely, Wolfson's alleged refusal to obey the bankruptcy court's order to vacate an apartment, in violation of § 727(a)(6)(A)[1].

█ In concluding that Wolfson had violated § 727(a)(3) by failing to keep or preserve records, Chief Judge Lifland pointed to a number of significant failures demonstrated by the record. The first relates to personal income tax returns. Wolfson had listed in his amended schedule of assets and liabilities federal tax liability for the years 1984–1989 in the amount of $60,000. The trustee asked Wolfson to produce his personal income tax returns for the years 1983–1989. Income tax returns are quintessential documents "from which the debtor's financial condition or business transactions might be ascertained," in the words of subsection (3). The trustee made the tax returns the first item in the list of requested documents which he sent to Wolfson with a letter dated March 20, 1990. After various procedural delays, recounted by Chief Judge Lifland in his opinion, Wolfson responded to the trustee's attorney in a letter dated January 11; 1991. Wolfson said that he had given his 1989 tax return

to the trustee at a prior hearing, a claim which the trustee does not appear to contest. Wolfson's January 11, 1991 letter may be read as claiming that the earlier returns had also been furnished to the trustee. In any event, he says in relation to the tax returns that "duplicates will be supplied," adding that

> There might be a short delay concerning delivery of the tax returns; I will endeavor to have them delivered as soon as possible although my currently being in the process of moving into new offices might also occasion some problem.

In point of fact, the 1983–1988 tax returns were not produced until March 1991, shortly before a scheduled pre-trial conference. The returns when produced, which do not support the scheduled tax liability, were not duplicates of contemporaneous tax returns; on the contrary, each return was signed and dated February 27, 1991. Accordingly it is fair to say that an aroma of fraud surrounds Wolfson's failure to keep, preserve, or previously produce the promised tax returns.

Items 6 and 7 in the trustee's March 20, 1990 demand for documents called upon Wolfson to produce documents evidencing ownership and disposition of any interest in a number of corporations, including Kimberly Aviation Leasing Corp., Key Copy, Cutco Industries, FSK Holdings Corp., and Warren Stanley Corp. After presumably reflecting upon this request for almost a year, Wolfson replied in his letter of January 11, 1991 with respect to the corporations listed in those items: "I never had any interest in any of the named corporations and therefore no such document [sic] exist." But Wolfson filed a schedule listing his stock holdings in Cutco Industries and FSK Holding Corp.; he admitted at his deposition that he was an officer and shareholder of Kimberly Aviation and had an interest in Warren Stanley; and, in a supplemental statement filed after his deposition, acknowledged that he was the presi-

---

1. That subsection provides that a debtor will be denied a discharge if he refused, in the case, "to obey any lawful order of the court, other than an order to respond to a material question or to testify." The parties discuss the alleged violation in the briefs, but I do not reach the issue, since the bankruptcy court did not base its judgment upon that ground.

dent and owner of Key Copy. However, Wolfson has produced no documents related to these or the other companies inquired into by the trustee. The bankruptcy court included these incidents among "other examples of the debtor's failure to keep accurate records." 139 B.R. at 286. Chief Judge Lifland referred to other failures to produce in dealing with subsection (3), which I do not feel it necessary to discuss in detail. After a review of pertinent bankruptcy authorities, the bankruptcy court rejected Wolfson's several excuses for nonproduction, stressed Wolfson's business sophistication and acumen, and concluded:

> Therefore, the Debtor had a greater responsibility to maintain accurate business records than the unsophisticated Debtor. He failed to do so and failed to adequately explain this omission. Consequently, the Trustee and creditors cannot reasonably assess his financial state. The Debtor has engaged in gamesmanship by playing "catch me if you can" through selective disclosure. Thus, movants have met their burden of proof, and there is no genuine issue of fact as to whether the Debtor should be denied a discharge under § 727(a)(3).

139 B.R. at 287.

Turning to § 727(a)(4), the Bankruptcy Court focused again upon Wolfson's initial denial of involvement with a number of corporations, followed by his acknowledgement of significant interests in them. The bankruptcy court sustained plaintiffs' claim that this conduct demonstrated that Wolfson "knowingly and fraudulently withheld business and financial records from the Trustee," observing that "no further evidence of fraud is necessary if a debtor's bankruptcy schedules reflect a 'reckless indifference to the truth.'" 139 B.R. at 288 (citing In re Gugliada, 20 B.R. 524, 528 (Bank.S.D.N.Y.1982)).

The bankruptcy court found as a third ground for summary judgment denying Wolfson's discharge his violation of § 727(a)(5). The bankruptcy court relied primarily upon Wolfson's failure to explain the disposition of approximately $500,000 which he held in an account in a New York bank in 1985. Again, Wolfson gives no consistent account of the disposition of this considerable sum. He first stated that the money had been spent for attorney's fees in the divorce proceedings, although he had kept no records to demonstrate that; then recanted that testimony as inaccurate and stated he had turned over the monthly statements and cancelled checks for that amount to the trustee, without supporting that claim, which the trustee denies. On that evidence, Chief Judge Lifland concluded that the plaintiffs were entitled to summary judgment of denial of discharge on the ground that Wolfson had "failed to explain satisfactorily ... any loss of assets or deficiency of assets to meet the Debtor's liabilities."

Contrary to Wolfson's contentions, the salient evidentiary material upon which plaintiffs relied came from individuals with personal knowledge of the events, thereby satisfying the requirement of Rule 56(e). I think it clear that the evidentiary material submitted by plaintiffs entitled them to summary judgment under Rule 56(c), unless Wolfson himself complied with Rule 56(e), which provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

There is a lack both of specificity and consistency in Wolfson's responses. The bankruptcy court correctly concluded, on the record before it, that plaintiffs were entitled to summary judgment on each of the three grounds posited as the bases for decision.

█ It remains to consider whether the bankruptcy court prejudiced Wolfson unfairly by denying him discovery before granting plaintiffs summary judgment. In addition to opposing the summary judg-

ment motion, Wolfson cross-moved under Rule 37, Fed.R.Civ.P., to compel the trustee and Ripps to produce documents specified in notices to produce. Wolfson argued in his declaration opposing summary judgment at ¶ 3 that "[t]hroughout the case it has been declarant's position that numerous documents relating to his financial condition had been taken without authority by Judith Ripps and therefore could not be produced by him." Wolfson's Rule 37 notices called upon the trustee to produce any documents furnished to him by Ripps, and upon Ripps to furnish any documents she had furnished to the trustee. Other requests to produce were keyed into various events or pleadings in the bankruptcy court.

At his deposition Wolfson articulated his charge that Ripps had stolen his records. Responding to questions by counsel for the trustee, Wolfson testified:

Q. Mr. Wolfson, do you have a record of any of these borrowings that you've made?

A. Whatever records I've had have either been lost, in several moves that I've made, or a number of my records, which is part of my transcripts in my matrimonial, when your client, Judith Ripps—

Q. She's not our client, Mr. Wolfson.

A. You could fool me. When she fled the State of New Jersey in the middle of the night, she took with her several cases of books and records which later appeared in her affidavit as saying that these were books and records which I left behind and those books and records which I've requested back from Ms. Ripps have never appeared.

So if you want my books and records, such as they are, you ask your client, Ms. Ripps, maybe she'll give them to you, because she sure as hell won't give them to me.

Q. When did Ms. Ripps take the records that you claim she took, what year was that?

A. It was in December of 1984.

Tr. 10–11.

Wolfson also testified that in 1989, with their matrimonial action raging in the State court,

Ms. Ripps, using an improper—improperly using an Order of the Court, interpreting it in a peculiar way, while I was away, I was gone for I think four days, invaded my apartment by having a locksmith come and change the lock.

I reported a theft at that time of a bunch of items that were in the apartment, including records.

*Id.* 12.

Wolfson testified that he was using the apartment in question, at 140 Riverside Drive, as "both my home and my office, so everything that I owned was there. I had forgotten about that." *Id.* 13.

At ¶ 3 of his declaration in support of his cross-motion, Wolfson argued to the bankruptcy court "that at a minimum the production should be required by order of this Court and the motion marked off the calendar until that time (or denied) . . ." Chief Judge Lifland did not deal specifically with Wolfson's cross-motion for production in his opinion granting plaintiffs summary judgment.

■ Within the summary judgment context, Wolfson's proper course was to invoke Rule 56(f), and argue that because Ripps had stolen his records he could not produce them, at least not until he had obtained discovery from Ripps and the trustee, who Wolfson clearly regards as acting in league with Ripps. In point of fact, Wolfson did not specifically invoke Rule 56(f). Plaintiffs contend in their brief in this Court that because Wolfson did not raise the issue in the bankruptcy court, he waived his right to assert the defense on appeal, citing *Mycak v. Honeywell, Inc.*, 953 F.2d 798 (2d Cir.1992).

Plaintiffs' argument exalts form over substance. Wolfson's declaration and the relief contained therein sufficiently invoked the spirit of Rule 56(f), if not its letter. *Mycak* is inapposite. In that case, a former employee who brought an action against his former employer to recover for his breach of contract in connection with a reduction in force appealed from a summary judgment in the employer's favor.

The Second Circuit held that he could not raise for the first time on appeal the issue of whether the employer had acted in good faith. *Id.* at 803. *Mycak* furnishes no useful guidance in the case at bar.

Nonetheless, there is no substance to Wolfson's contentions that his allegations of theft of records by Ripps precludes summary judgment against him, or that he is entitled to discovery on the issue. Wolfson gives no specifics with respect to the records he had maintained prior to his spouse's alleged depredations in 1984 and 1989; nor does he make any effort to itemize or describe the records which Ripps took. Wolfson simply says, in conclusory terms, that he can produce nothing because Ripps stole everything. I think his protestations are inherently implausible, and not sufficiently supported in any event. Furthermore, Wolfson's charges against Ripps have nothing to do with the evasive and inconsistent testimony upon which Chief Judge Lifland relied in finding violations of § 727(a)(3), (4) and (5).

Plaintiffs supported their summary judgment motion by admissible evidence of Wolfson's acts, whose cumulative effect is sufficient to demonstrate "a pattern of reckless and cavalier disregard for the truth." *See In re Kaiser,* 722 F.2d 1574, 1583 and n. 4 (2d Cir.1983). Wolfson has not set forth specific facts showing that there is a genuine issue for trial.

Having considered the case *de novo* and in the light of the authorities controlling summary judgment practice, I affirm the order and judgment of the bankruptcy court.

It is SO ORDERED.