
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>OLIVIER FRANCOIS P. RIGON and<br>CHRISTINE HUI SEOUN KWON,<br><div align="right">Debtors.</div> | BAP No. WW-23-1206-GBS<br><br>Bk. No. 2:21-bk-11641-CMA |
| OLIVIER FRANCOIS P. RIGON;<br>CHRISTINE HUI SEOUN KWON,<br><div align="right">Appellants,</div><br>v.<br>UNITED STATES TRUSTEE, SEATTLE,<br><div align="right">Appellee.</div> | Adv. No. 2:22-ap-01011-CMA<br><br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Western District of Washington
Christopher M. Alston, Chief Bankruptcy Judge, Presiding

Before: GAN, BRAND, and SPRAKER, Bankruptcy Judges.

Memorandum by Judge Gan.

Partial Concurrence Partial Dissent by Judge Spraker.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

# INTRODUCTION

Chapter 7[1] debtor Olivier Francois P. Rigon appeals the bankruptcy court's judgment denying his discharge under § 727(a)(3), (a)(4), and (a)(5). Mr. Rigon's wife, Christine Kwon, jointly filed the chapter 7 petition and was also denied a discharge, but she does not challenge the denial of her discharge. After trial, the court determined that Mr. Rigon omitted assets and transfers from his schedules and statements, failed to keep recorded information from which his financial condition could be ascertained, and failed to explain the loss of assets.

Mr. Rigon maintains that he was generally unaware of the undisclosed assets and transfers, and he relied on Ms. Kwon's superior financial sophistication when he signed the schedules and statements. He argues the bankruptcy court erred by imputing Ms. Kwon's actions and knowledge to him, and by denying his discharge without a sufficient evidentiary basis.

While much of the evidence presented at trial involved Ms. Kwon, and not all the court's findings are clearly directed toward Mr. Rigon, there is a sufficient evidentiary basis for the court's decision, and we discern no error. Mr. Rigon failed to maintain and disclose records of community assets, and he knowingly omitted assets, income, and transfers from his schedules and statements. Accordingly, we AFFIRM.

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

## FACTS[2]

### A.  Prepetition events

Mr. Rigon and Ms. Kwon met sometime before 2013 when Mr. Rigon, while living in France, visited a friend in the United States. In 2013, Mr. Rigon moved to Atlanta, Georgia to live with Ms. Kwon. In 2015, Amazon recruited Ms. Kwon to work for it as a data engineer. The couple moved to Washington, and they married in 2016.[3]

In 2015, Ms. Kwon formed Rock PI, LLC ("Rock PI") to purchase, renovate, rent, and sell real properties. Since its formation, Ms. Kwon was the sole managing member of Rock PI, and she managed its finances. She obtained a real estate license and was a real estate broker for several years.

From its formation until 2020, Mr. Rigon worked exclusively for Rock PI. He held himself out as a co-founder, and he attended various real estate networking events where he pitched the business to potential investors. Mr. Rigon's primary role at Rock PI was to manage projects. He was not always paid for his work, but he sometimes received a salary from Rock PI. Mr. Rigon obtained a real estate license in 2019.

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the adversary proceeding and main bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[3] Washington is a community property state, and property acquired during the marriage is presumed to be community property. Wash. Rev. Code § 26.16.030; *Seizer v. Sessions*, 940 P.2d 261, 266 (Wash. 1997). Mr. Rigon does not contest the bankruptcy court's presumption that assets acquired by Ms. Kwon after 2016 are community property.

3

For a few years, Rock PI was profitable and expanding. In January 2018, Ms. Kwon left Amazon to focus on the real estate business, but approximately a year later, Rock PI began to struggle. It was unable to pay creditors and had to lay off employees. In February 2019, Ms. Kwon began working as a data engineer for Lithia Motors, Inc. Later in 2019, Mr. Rigon also sought other employment and began the process of fulfilling the prerequisites to become a police officer. After obtaining his GED, attending the police academy, and passing necessary exams, Mr. Rigon began working for the Seattle Police Department in 2020.

### 1. The Kwon Irrevocable Trust

In 2016, Mr. Rigon and Ms. Kwon hired accountants from a company called Perfect Tax ("Perfect Tax") for tax-related services. Perfect Tax created an irrevocable trust (the "Trust"), which named Ms. Kwon as trustor and Mr. Rigon as primary beneficiary. Perfect Tax also established an entity for the couple called Chrisol, LLC ("Chrisol").[4]

During a two-year period, Chrisol transferred over $100,000 to the Trust. Ms. Kwon testified that she transferred money to Chrisol from either the couple's joint bank account or Rock PI's account, then transferred money from Chrisol to the Trust's bank account. Although she initiated the

---

[4] Chrisol's tax returns show it is a Texas LLC solely owned by International Medical Help Society ("IMHS"). IMHS is Chrisol's managing member and Ms. Kwon and Mr. Rigon are its managers. It is not clear what interest, if any, the couple had in IMHS.

transfers, Ms. Kwon could not explain their purpose, and she testified that she made the transfers at the direction of Perfect Tax.

From 2018 through 2020, the Trust paid over $100,000 to American General Life Insurance Company for a life insurance policy owned by the Trust with Mr. Rigon named as beneficiary (the "AIG Policy"). Mr. Rigon claimed he did not know he was the beneficiary of the AIG Policy.

The couple also received checks from the Trust totaling over $100,000. Neither Ms. Kwon nor Mr. Rigon explained the payments from the Trust, and they offered conflicting testimony about whether they deposited money into the Trust's bank account, had access to its account, or ever wrote checks from the Trust's account. The Trust's bank statements reveal that Ms. Kwon made many deposits into its account.

**2.    The Denny Street properties**

In 2016, Rock PI purchased three real properties located on Denny Street in Bremerton, Washington ("2315 Denny," "2317 Denny," "2319 Denny," and collectively the "Denny Street Properties"). In 2017, Rock PI transferred the Denny Street Properties to Ms. Kwon for no consideration. Ms. Kwon explained that Rock PI would purchase properties and quitclaim them to her to refinance at a more favorable interest rate.

From 2017 until 2020, Mr. Rigon and Ms. Kwon collected rents of approximately $3,000 per month from tenants in the Denny Street Properties. They reported the rental income on their personal tax returns.

Mr. Rigon and Ms. Kwon sold the Denny Street Properties in 2020. They received net proceeds of $19,072.51 from the sale of 2315 Denny, which they deposited into Rock PI's bank account, and they received net proceeds of $48,438,77 from the sale of 2319 Denny, which they deposited into their personal bank account. The couple sold 2317 Denny in November 2020, but did not realize net proceeds from that sale.

Ms. Kwon testified that she and Mr. Rigon had several discussions about how to use the sale proceeds. They considered using the funds to "buy back" their home following its July 2020 foreclosure, but they ultimately decided to pay six months' advance rent for a residence and use the remaining proceeds for their last real estate project.

### 3.    Interests in other companies

Ms. Kwon held a 50% interest in Sands Partners, LLC ("Sands Partners"), which purchased a motel in Ocean Shores, Washington in August 2019. Ms. Kwon also held a 25% interest in Sands Holdings, LLC ("Sands Holdings"), which purchased a hotel in Ocean Shores, Washington in August 2019. Her ownership of each company was later reduced to 5%, but she did not receive any payment in exchange for her reduced equity, and she failed to explain why her ownership was reduced.

Ms. Kwon's bank statements show that she received approximately $25,000 from Sands Holdings in 2021. The couple's joint bank account shows that they received $10,000 from Sands Holdings in July and August 2021, and an additional $5,000 from Bamboo Consulting, Inc.—a company

6

owned by Ms. Kwon's partner in Sands Partners and Sands Holdings—in August 2021.

**B.     The bankruptcy and adversary complaint**

In 2020, three different creditors obtained judgment against Ms. Kwon, Mr. Rigon, and Rock PI, totaling approximately $300,000. Rock PI filed a chapter 7 petition in February 2021, and the couple filed a joint chapter 7 petition in August 2021.

Mr. Rigon and Ms. Kwon filed their schedules and statement of financial affairs ("SOFA") in September 2021. They did not schedule their interests in the Trust, the AIG Policy, or a Bank of America savings account (the "BofA Account"). They did not disclose the rental income or sales proceeds from the Denny Street Properties, and they did not disclose the Trust or income they received from it. Despite receiving $15,000 from Sands Holdings and Bamboo Consulting, Inc. within a few weeks of filing their petition, the couple did not disclose the income. They each affirmed they reviewed the schedules and SOFA, and that the information provided was correct.

At the initial § 341 meeting of creditors, Mr. Rigon and Ms. Kwon again testified that their schedules were complete and accurate. They confirmed they did not transfer or sell any property within two years of the petition date. However, when confronted with records of the sales of the Denny Street Properties, Ms. Kwon admitted they sold the properties but said they misunderstood the question in the SOFA. The couple stated they

7

would provide documents requested by the chapter 7 trustee and would update their SOFA.

Mr. Rigon and Ms. Kwon did not immediately provide the documents. Their ongoing failure to provide necessary information and disclose all their assets resulted in eleven § 341 meetings. Although the chapter 7 trustee repeatedly informed them that their schedules and SOFA were incomplete and inaccurate, the couple did not amend their documents until March 2022, when they made a single amendment to reduce the value of one vehicle from approximately $9,000 to $6,000.

The chapter 7 trustee made several requests for the couple's personal tax returns, but the most recent return they provided was for 2017. After months of delay, they filed their 2018 return, which they finalized in August 2022 and amended in November 2022. Mr. Rigon and Ms. Kwon promised they would produce their 2019 and 2020 returns within a year of the initial § 341 meeting, but they had not done so by October 2023.

In March 2022, the United States Trustee (the "UST") filed an adversary complaint to deny the couple's discharges. The UST made allegations against each debtor individually. Pertinent to Mr. Rigon, the UST alleged he failed to keep adequate records, made false oaths, and failed to adequately explain the loss of community assets.

Mr. Rigon argued that any omissions were inadvertent or de minimis, or that such transfers were not required to be disclosed because

8

they occurred in the ordinary course of business.[5] He also asserted that he should be entitled to a discharge because he was generally uninvolved in the couple's business transactions, and he disclosed everything personally known to him.

## C.    The trial and the court's judgment

The bankruptcy court conducted a trial, which concluded in October 2023. Mr. Rigon acknowledged that he signed the schedules and SOFA and testified at the § 341 meeting that he was personally familiar with the information in the documents, but he testified at trial that he did not actually review the documents or do anything to ensure they were accurate.

Mr. Rigon admitted that he met with Perfect Tax in 2016 and discussed forming the Trust, but he did not review the Trust document. According to Mr. Rigon, he was unaware of his interest in the Trust or the AIG Policy, and although he knew the Denny Street Properties were sold, he did not know who owned them. Mr. Rigon stated he was aware of rental income from the Denny Street Properties, but he did not know whether he disclosed that income in his SOFA.

Ms. Kwon testified that although she personally held title to the Denny Street Properties, she considered them business assets belonging to

---

[5] Question 18 of the SOFA asks: "Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?"

Rock PI, and she sold them in the ordinary course of its business. Contrary to her prior testimony, she stated that the $25,000 received from Sands Holdings was a loan, but she acknowledged that she did not list the entity as a creditor.

After trial, the bankruptcy court entered an order and judgment denying Mr. Rigon's discharge under § 727(a)(3), (4), and (5). The court held that creditors and the trustee could not accurately ascertain his financial condition because he failed to disclose his interest in the BofA Account, failed to maintain and preserve records pertaining to income from Sands Holdings,[6] or records pertaining to the Trust and its bank account, and he failed to file tax returns. The court determined that Mr. Rigon "feigned ignorance" of the Trust's assets and its actions, and he provided no justification for his transactions with the Trust.

The bankruptcy court also held that Mr. Rigon made false oaths or omissions of material fact in his schedules and SOFA. Despite not knowing if the documents were accurate, he falsely stated they were, with the intent that creditors and the trustee would rely on the documents. Mr. Rigon did not disclose his interest in sale proceeds from the Denny Street Properties, income from Sands Holdings, the BofA Account, or the Trust. Finally, the court held that Mr. Rigon failed to satisfactorily explain the decrease in his

---

[6] The bankruptcy court determined that the couple's failure to disclose the $5,000 from Bamboo Consulting, Inc. was inadvertent.

community interest in Sands Partners and Sands Holdings. Mr. Rigon timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err by denying Mr. Rigon's discharge?

## STANDARDS OF REVIEW

In an appeal from a denial of discharge under § 727: "(1) the court's determinations of the historical facts are reviewed for clear error; (2) the selection of the applicable legal rules under § 727 is reviewed de novo; and (3) the application of the facts to those rules requiring the exercise of judgments about values animating the rules is reviewed de novo." *Searles v. Riley (In re Searles)*, 317 B.R. 368, 373 (9th Cir. BAP 2004), *aff'd*, 212 F. App'x 589 (9th Cir. 2006).

Under de novo review, "we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. 2014).

Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

11

## DISCUSSION

Mr. Rigon argues he was unaware of most of the undisclosed financial assets and transactions, and the bankruptcy court improperly imputed Ms. Kwon's actions and knowledge to him. He asserts that the evidence does not provide a basis to deny his discharge. Mr. Rigon contends that his failure to schedule the BofA account was not material, and he was not required to include the Denny Street Property sales because they were made in the ordinary course of business.

### A.   Legal standards

The bankruptcy court denied Mr. Rigon's discharge under three independent grounds: § 727(a)(3), (a)(4), and (a)(5). Because the provisions of § 727(a) are phrased in the disjunctive, we must affirm unless Mr. Rigon can demonstrate error under each of the court's bases. *See, e.g. Farouki v. Emirates Bank Int'l, Ltd.,* 14 F.3d 244, 250 (4th Cir. 1994).

#### 1.      § 727(a)(3)

Pursuant to § 727(a)(3), a bankruptcy court must deny the debtor a discharge when "the debtor has concealed . . . or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]"

"[T]he purpose of § 727(a)(3) is to make discharge dependent on the debtor's true presentation of his financial affairs." *Caneva v. Sun Cmtys.*

*Operating Ltd. P'ship (In re Caneva)*, 550 F. 3d 755, 761 (9th Cir. 2008) (citation omitted). This requirement "removes the risk to creditors of 'the withholding or concealment of assets by the bankrupt under cover of a chaotic or incomplete set of books or records.'" *Id.* (quoting *Burchett v. Myers*, 202 F.2d 920, 926 (9th Cir. 1953)).

Consequently, a debtor must "present sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition and to follow his business transactions for a reasonable period in the past." *Id.* (quoting *Rhoades v. Wikle*, 453 F.2d 51, 53 (9th Cir. 1971)). The statute "places an affirmative duty on the debtor to create books and records accurately documenting his business affairs." *Id.* at 762 (citations omitted).

**2.    § 727(a)(4)**

Section 727(a)(4) denies discharge to a debtor who "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]" A debtor's false statement or omission in his schedules or statement of financial affairs can constitute a false oath under §727(a)(4). *Khalil v. Devs. Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (9th Cir. BAP 2007) (first citing *In re Searles*, 317 B.R. at 377; and then citing *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005), *aff'd*, 241 F. App'x 420 (9th Cir. 2007)), *aff'd*, 578 F.3d 1167 (9th Cir. 2009). The purpose of § 727(a)(4) is "to insure that the trustee and creditors have accurate information without having to conduct costly investigations." *In re Khalil*,

13

379 B.R. at 172 (quoting *Fogal Legware of Switz., Inc. v. Wills (In re Wills)*, 243 B.R. 58, 63 (9th Cir. BAP 1999)).

To prevail on a § 727(a)(4) claim, the plaintiff must prove: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *In re Retz*, 606 F.3d at 1197 (quoting *In re Roberts*, 331 B.R. at 882). "A debtor acts knowingly if he or she acts deliberately and consciously." *Id.* at 1198 (quoting *In re Khalil*, 379 B.R. at 173).

The intent element of § 727(a)(4) "is usually proven by circumstantial evidence or by inferences drawn from the debtor's conduct." *Id.* at 1199; *see also In re Khalil*, 578 F.3d at 1169 ("Fraudulent intent may be inferred from a pattern of behavior."). Both the number of omissions, and a debtor's failure to rectify inconsistencies and omissions by filing amended schedules, can support a finding that a debtor acted fraudulently in making a false oath. *In re Khalil*, 379 B.R at 176; *AutoSource Cap. v. Traina (In re Traina)*, 501 B.R 379, 386 (Bankr. N.D. Cal. 2013); *see also In re Retz*, 606 F.3d at 1199 ("[A] significant number of falsehoods and omissions, together with the failure to amend the Schedules and SOFA in the three years between the petition and trial, can constitute reckless indifference to the truth, which is evidence of fraudulent intent.").

### 3. § 727(a)(5)

Pursuant to § 727(a)(5), the bankruptcy court must deny discharge when "the debtor has failed to explain satisfactorily, before determination

of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." To prevail on a claim under § 727(a)(5), a plaintiff must show: "(1) debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets; (2) on the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and (3) the bankruptcy pleadings or statement of affairs do not reflect an adequate explanation for the disposition of the assets." *In re Retz*, 606 F.3d at 1205 (quoting *Olympic Coast Inv., Inc. v. Wright (In re Wright)*, 364 B.R. 51, 79 (Bankr. D. Mont. 2007)). Once the plaintiff establishes these elements, the debtor must offer credible evidence regarding disposition of the missing assets. *Id.*

## B.     The bankruptcy court did not err by denying Mr. Rigon's discharge.

Mr. Rigon's primary argument is that he was unaware of the various assets and transactions and should not be denied a discharge because of his failure to maintain records of those assets, disclose them in his schedules and SOFA, or explain their loss. But despite Ms. Kwon's superior financial acumen, Mr. Rigon had a duty to maintain adequate records of his financial condition and to disclose assets and income about which he knew. "A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." *In re Retz*, 606 F.3d at 1199 (cleaned up).

15

The bankruptcy court determined that Mr. Rigon "feigned ignorance" and both debtors demonstrated a "pattern of willful ignorance of their assets and liabilities." We typically give great deference to the bankruptcy court's determination of witness credibility. *See Cooper v. Harris*, 581 U.S. 285, 309 (2017) ("we give singular deference to a trial court's judgments about the credibility of witnesses . . . because the various cues that 'bear so heavily on the listener's understanding of and belief in what is said' are lost on an appellate court later sifting through a paper record." (quoting *Anderson*, 470 U.S. at 575)).

We agree with the bankruptcy court that both debtors exhibited willful ignorance of their assets and liabilities, particularly involving Chrisol and the Trust. But despite the numerous "red flags" surrounding their actions, neither the record presented, nor the court's decision, clearly delineate each individual debtor's involvement, intent, and liability. Many of the court's factual findings are based on Ms. Kwon's actions and knowledge of assets that she controlled. Notwithstanding the fact that Ms. Kwon was primarily responsible for the couple's financial dealings, Mr. Rigon was obligated to maintain records and disclose his known interests in community assets. His complete reliance on Ms. Kwon in verifying the accuracy and completeness of his schedules and SOFA—which omitted assets he knew about—was at least reckless indifference to the truth, and the evidence supports the court's decision to deny Mr. Rigon's discharge.

16

The record amply supports Mr. Rigon's individual liability under § 727(a)(3) based on his failure to maintain and disclose records of income from Sands Holdings, the BofA Account, and his personal income tax returns. The evidence also supports the court's decision under § 727(a)(4) for Mr. Rigon's material omissions of his interest in the BofA Account, income from Sands Holdings, and the Denny Street Properties.[7]

Mr. Rigon was aware of the BofA Account but argues he was justified in concealing it because it had no value and there was no evidence that he used the account. Similarly, he knew of the Denny Street Properties sales, but argues he was not required to disclose them because they were sold in the ordinary course of Ms. Kwon's business. Mr. Rigon contends he was unaware of the Sands Holdings income, and he blames his failure to timely file tax returns on Perfect Tax and the complex tax strategies it devised for the couple. Mr. Rigon's excuses are unavailing.

First, he is not relieved of his statutory obligation to maintain and disclose financial records merely because he believes the records pertain to

---

[7] We are less convinced that the evidence establishes a violation of § 727(a)(5) by Mr. Rigon for Ms. Kwon's reduced equity in Sands Holdings and Sands Partners. We agree with the UST that § 727(a)(5) does not include an intent element and "the issue turns on whether a satisfactory explanation is—or is not—forthcoming," *Harrington v. Simmons (In re Simmons)*, 810 F.3d 852, 860 (1st Cir. 2016). But it is not clear that the chapter 7 trustee or UST directed the issue to Mr. Rigon, or that he could offer a satisfactory explanation. Although the ownership interests were community assets, there is no evidence that Mr. Rigon had knowledge of Ms. Kwon's involvement in those entities. However, because we affirm the bankruptcy court's decision under § 727(a)(3) and (a)(4), we do not reach the question of whether denial of discharge was also warranted under (a)(5).

17

a valueless asset. The "purpose of § 727(a)(3) is to make discharge dependent on the debtor's true presentation of his financial affairs." *In re Caneva*, 550 F.3d at 761 (citation omitted). The disclosure requirement allows creditors and the trustee to review a debtor's transactions and verify his financial condition, and it "removes the risk to creditors of 'the withholding or concealment of assets by the bankrupt under the cover of a chaotic or incomplete set of books or records.'" *Id.* (quoting *Burchett,* 202 F.2d at 926). In short, it was not up to Mr. Rigon to decide which accounts were worth disclosing.

Second, although Mr. Rigon claims he was unaware of the Sands Holdings income, the court found his testimony not credible. While it is plausible that Mr. Rigon was unaware of the Trust—given that the only evidence of his knowledge was his presence at the initial 2016 meeting with Perfect Tax—the same cannot be said for the Sands Holdings income. The debtors received at least $10,000 from Sands Holdings within a few weeks of filing their chapter 7 petition. Mr. Rigon had access to the joint account and made payments from it. It is not plausible that he was unaware of the Sands Holdings income, and he was obligated to maintain and disclose records of it.

Moreover, Mr. Rigon's justification for failing to keep records does not depend on his subjective knowledge. The "justification for a bankrupt's failure to keep or preserve books or records will depend on . . . whether others in like circumstances would ordinarily keep them." *Id.* at 763

18

(quoting *Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294, 1299 (9th Cir. 1994)) (cleaned up). He does not explain why a typical debtor would not be expected to keep records of significant income received in the immediate weeks prior to filing a petition. Under these circumstances, the bankruptcy court did not err by rejecting Mr. Rigon's purported justification for not maintaining records.

Finally, tax returns are important for the trustee and creditors to check the accuracy of a debtor's schedules and SOFA. *See Nisselson v. Wolfson (In re Wolfson)*, 152 B.R. 830, 833 (S.D.N.Y. 1993) ("Income tax returns are quintessential documents 'from which the debtor's financial condition or business transactions might be ascertained,' in the words of subsection (3)."); *Fox v Miller*, 589 B.R. 659, 664 (C.D. Cal. 2018) ("Appellant's failure to file tax returns provides another basis for denying Appellant's discharge under section 727(a)(3) because it prevents creditors and trustees from obtaining important financial information.") (cleaned up). It is immaterial whether Mr. Rigon intentionally failed to file his returns. *Fox*, 589 B.R. at 665.

Mr. Rigon blamed Perfect Tax for delays in filing his returns, but he provided no evidence to corroborate his claim. The bankruptcy court relied on email communications and found that the delays stemmed from Mr. Rigon's and Ms. Kwon's failure to provide accurate information.

The evidence also supports the court's conclusion that Mr. Rigon was aware of income and proceeds from the Denny Street Properties. Ms. Kwon

19

testified that the couple had numerous discussions about how to utilize the sale proceeds, and their tax returns included rental income from the properties.

Mr. Rigon argues that the court erred by rejecting his "ordinary course of business" defense, but he does not cogently explain why the defense should apply. We agree with the bankruptcy court that Rock PI was engaged in buying and selling real properties, but there is no evidence in the record that Mr. Rigon or Ms. Kwon personally engaged is such business. The record demonstrates that Ms. Kwon worked as a data engineer, or directly for Rock PI, and Mr. Rigon worked solely for Rock PI until he began working as a police officer. Additionally, Mr. Rigon offers no explanation why he was not obligated to disclose rental income generated by the Denny Street Properties, which the couple reported in their personal tax returns.

Mr. Rigon had an independent obligation to disclose records and he knowingly made material omissions in his schedules and SOFA. The bankruptcy court did not err in denying his discharge.

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court's judgment denying Mr. Rigon's discharge.

Partial concurrence and partial dissent begins on next page.

20

SPRAKER, Bankruptcy Judge, concurring in part and dissenting in part.

I agree with my colleagues that the bankruptcy court did not err in denying Mr. Rigon his discharge under § 727(a)(4). Specifically, substantial evidence supports the court's conclusion that Mr. Rigon knowingly and fraudulently made a false oath by failing to disclose the sales of the Denny Street Properties[1] and the income received from those sales. I would end the analysis there. The other claims for denial of the discharge lack specific findings as to Mr. Rigon's involvement in the various business endeavors and interests previously discussed. The bankruptcy court's decision focuses predominantly on Ms. Kwon's knowledge and actions, with good reason. The court often spoke of "the debtors" or "the defendants" generally, but identified specific actions taken, or interests held, by Ms. Kwon alone. This is understandable given their jointly administered case. But I write separately to emphasize that denial of discharge requires the bankruptcy court to render sufficient findings and conclusions as to each spouse individually. The record before us does not support denial of Mr. Rigon's discharge under § 727(a)(3). I also agree with the majority that there is no need to further examine the claims under § 727(a)(5) in light of our affirmance under § 727(a)(4).

I.    **The failure to keep and preserve adequate records under § 727(a)(3).**

---

[1] I use the same defined terms as the majority decision.

1

The majority decision concludes in part that Mr. Rigon's discharge was properly denied under § 727(a)(3) for failure to maintain and disclose records for the BofA Account, Sands Holdings, the Trust, and for his failure to file his personal tax returns. As the bankruptcy court and the majority explained, to deny a discharge for the failure to keep and preserve records under § 727(a)(3), the creditor or trustee must prove, "(1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *Caneva v. Sun Cmtys. Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 761 (9th Cir. 2008).

### A. The savings account.

The bankruptcy court denied Mr. Rigon's discharge for his failure to disclose the BofA Account because "[c]reditors and the Trustee could not accurately ascertain the Defendants' financial condition …." Order and Judgement (Dec. 12, 2023) at 22. Mr. Rigon failed to disclose this savings account in the original and amended Schedule A/B that he and his wife filed. Nonetheless, the parties have stipulated that the debtors produced bank statements for the BofA Account in response to a subpoena from the chapter 7 trustee. Having produced the relevant bank statements, I do not see how the original failure to disclose the savings account made "it impossible to ascertain the debtor's financial condition and material business transactions." This is not to condone the failure to disclose the savings account, which may serve as the basis for denial of discharge for

2

making a false oath under § 727(a)(4). But under § 727(a)(4) the UST was required to prove that Mr. Rigon fraudulently made the false oath. Under § 727(a)(3), no intent to conceal is required. *Nevett v. U.S. Tr. (In re Nevett)*, 2021 WL 2769799, at *11 (9th Cir. BAP July 1, 2021) (citing *Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294, 1297 (9th Cir. 1994)). Because of their distinctive elements, § 727(a)(3) and § 727(a)(4) should not be employed as if they are readily interchangeable.

### B. Sands Holdings.

The bankruptcy court found that the defendants failed to maintain or preserve adequate records relating to income and interests from Sands Partners and Sands Holdings. The record amply supports Ms. Kwon's knowledge and involvement in both companies and her failure to keep and preserve records of her interests in both, including the reduction of her interests in both companies. But there is no finding as to Mr. Rigon's involvement in Sands Partners or Sands Holdings, or even his knowledge of Ms. Kwon's interest or the income she received from them. He denied any such knowledge. My colleagues address this point by noting that the bankruptcy court found Mr. Rigon not credible. The bankruptcy court specifically found Ms. Kwon not credible in several specific instances. It did not, however, make any similar specific findings as to Mr. Rigon. Rather, the court stated, "[t]he Defendants feigned ignorance as to their Trust's assets and actions." There is no such comment as to the Sands companies.

We are in no position to extend that factual finding to Mr. Rigon's claimed ignorance of Ms. Kwon's interest in Sands Partners and Sands Holdings.

The majority decision concludes: "The debtors received at least $10,000 from Sands Holdings within a few weeks of filing their chapter 7 petition. Mr. Rigon had access to the joint account and made payments from it. It is not plausible that he was unaware of the Sands Holdings income, and he was obligated to maintain and disclose records of it." My colleagues draw a reasonable inference from the totality of the record. But their conclusion hinges on a factual determination that Mr. Rigon knew of the Sands interest and income. The bankruptcy court made no such finding. As the majority decision observes at Footnote 8, "[a]lthough the ownership interests were community assets, there is no evidence that Mr. Rigon had knowledge of Ms. Kwon's involvement in [Sands Holdings and Sands Partners]." The bankruptcy court found Mr. Rigon not credible as to his knowledge of the Trust rather than the Sands companies. It was the UST's burden to prove that Mr. Rigon knew of the interest and income from the Sands companies such that he was required to keep and preserve that information.[2] Thus, if this were the sole basis for denying Mr. Rigon

---

[2] As with the BofA Account, the chapter 7 trustee was aware of the $10,000 payment to Ms. Kwon from Sands Holdings. Apparently, the UST again complains that Mr. Rigon's discharge should be denied merely for the failure to disclose the Sands Holdings income Ms. Kwon received shortly before the bankruptcy filing. Such claim does not sound in § 727(a)(3) given the information that was ultimately provided.

his discharge, I would remand to the bankruptcy court for further findings of fact as to Mr. Rigon.

### C. The Trust.

The bankruptcy court also held that the defendants failed to keep and preserve records as to the Trust because "[t]he Defendants were unable to explain the thousands of dollars they transferred into their Trust." The UST has specifically referenced three checks from the Trust. Each of these checks was signed by Ms. Velasquez as trustee of the Trust and is dated between 2017 and 2019: "(1) a $66,000 check payable to Ms. Kwon dated January 30, 2017; (2) a $40,000 check payable to Ms. Kwon dated January 1, 2019; and (3) a $2,500 check payable to Ms. Kwon and Mr. Rigon for 'school fee' dated September 26, 2019." The record does not reveal who endorsed the checks. Again, the record demonstrates that Ms. Kwon was well aware of these payments, but there is a dearth of evidence to show that Mr. Rigon was. It is unclear what rights his status as beneficiary entitled him to under the Trust such that he was under any obligation to keep and preserve records of the Trust.

The court noted that the Trust's money had been used to purchase and maintain the AIG Policy, which named Mr. Rigon as the beneficiary. Yet, there is no evidence that Mr. Rigon ever wrote any checks to, or from, the Trust. The only evidence of his involvement is his attendance at the initial meeting with the accountant in 2016 where creation of the Trust was discussed. The only specific evidence of Mr. Rigon's subsequent

involvement is one check from the Trust dated September 26, 2019, jointly payable to him and Ms. Kwon for $2,500. True, the court did state that "[t]he Defendants feigned ignorance as to their Trust's assets and actions." But again, if this were the only basis for denying Mr. Rigon's discharge, I would remand to the bankruptcy court for more specificity as to the extent of Mr. Rigon's individual knowledge sufficient to impose on him a personal obligation to keep and preserve records for the Trust.

### D. The failure to file tax returns.

The bankruptcy court also concluded that "[t]he Defendants' failure to timely file tax returns, in addition to their failure to keep or preserve other records, is grounds for denying the Defendants' discharge." The debtors filed their last tax return for 2017 and produced an unsigned return for 2018. No tax return was presented for 2019 or 2020, though the debtors filed their bankruptcy in August 2021.

The failure to prepare and file tax returns timely may be strong evidence of the failure to keep and preserve adequate records of a debtor's financial condition. *See Pher Partners v. Womble (In re Womble)*, 289 B.R. 836, 858 (Bankr. N.D. Tex. 2003), *aff'd*, 299 B.R. 810 (N.D. Tex. 2003), *and aff'd*, 108 F. App'x 993 (5th Cir. 2004); *see also Wachovia Bank v. Spitko (In re Spitko)*, 357 B.R. 272, 310 (Bankr. E.D. Pa. 2006). But the failure to file tax returns, by itself, is insufficient to establish that a debtor failed to maintain and preserve records that made it impossible to ascertain the debtor's financial condition and material business transactions. *Compare Murray v. Altendorf*

6

*(In re Altendorf)*, 2015 WL 4575219, at *8 (Bankr. D.N.D. July 29, 2015) ("Failing to file a tax return or to produce it during discovery in an adversary proceeding, without more, does not rise to the level of concealing or destroying financial documents under the circumstances of this case."), *with Jou v. Adalian (In re Adalian),* 474 B.R. 150, 164 (Bankr. M.D. Pa. 2012) ("while not alone dispositive, a debtor's failure to file timely tax returns—especially for several years in a row—is a blatant example of a failure to maintain adequate records." (cleaned up)), *and Bell v. Claybrook (In re Claybrook)*, 385 B.R. 842, 852 (Bankr. E.D. Tex. 2008) ("Defendant's failure to file timely tax returns, to produce her tax returns to Bell, to produce the documents underlying her tax returns, or to introduce the allegedly filed returns into evidence are factors for the Court to consider under § 727(a)(3)."), *aff'd,* 2008 WL 4646929 (E.D. Tex. Oct. 20. 2008). This is because the party challenging the debtor's discharge under § 727(a)(3) must prove that Mr. Rigon's failure to keep and preserve records made it impossible to ascertain his financial condition. *Caneva*, 550 F. 3d at 761. Debtors are not required to keep or present any specific types of records to satisfy this requirement; they only need to keep records that adequately explain their financial condition.

Mr. Rigon failed to initially disclose the BofA Account, a joint check payable to him and his wife from Sands Holdings, and his interest in the Trust as a beneficiary. Yet, that information was ultimately provided to the chapter 7 trustee. The initial failure to disclose—later rectified—is not an

7

appropriate basis to deny Mr. Rigon's discharge under § 727(a)(3). True, Ms. Kwon has failed to explain why her interests in Sands Holdings and Sands Partners were reduced to 5%, and why or how she transferred funds into the Trust and received funds from the Trust. The court did not find, and the UST did not establish, however, that Mr. Rigon had any rights in either Sands entity or involvement in the Trust that would give rise to an obligation to keep and preserve records for actions in which he did not participate—involving entities in which he had no interest other than any community interest.

Denying a motion for summary judgment, the bankruptcy court in *Texas Capital Bank v. Sharp (In re Sharp)*, 2015 WL 860496, at * 9 (Bankr. E.D. Tex. Feb. 26, 2015) observed in a similar situation:

> The Plaintiff has failed to tender any summary judgment evidence that Ms. Sharp, a registered nurse, had any involvement in the business operations of her husband or played any role in the apparent dissipation of any cattle/equipment assets. Indeed, other than the documentation itself, the Plaintiff has failed to tender any summary judgment evidence against Ms. Sharp at all. A plaintiff in this context must make a proper showing as against each individual debtor. The mere existence of the marital relationship does not determine a spouse's entitlement to discharge.

This appeal demonstrates the importance of separate findings as to the basis for denial of each spouse's individual discharge under § 727.

In sum, I concur in the result as to the denial of Mr. Rigon's discharge under § 727(a)(4). And I join in the parts of my colleagues' analysis

8

affirming the denial of Mr. Rigon's discharge under § 727(a)(4) based on Mr. Rigon's omissions regarding the sale of the Denny Street Properties and the discussion of § 727(a)(5). However, for the reasons set forth above, I respectfully decline to join in the remainder of my colleagues' decision as to the claims under § 727(a)(3).